STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND SPILL COMPENSATION FUND, DEPARTMENT OF TREASURY, PLAINTIFFS-APPELLANTS, v. ARLINGTON WAREHOUSE, DEFENDANT-APPELLANT, AND J.T. BAKER CHEMICAL CO., MIRACLE ADHESIVES, CELANESE CO., SOLVENT CHEMICAL, DUPLEX LABORATORIES, ASHLAND CHEMICAL, LUBRICAL INC., ICC INDUSTRIES, ALPHA INTERNATIONAL CHEMICAL AND CARBOLINE CO., DEFENDANTS-RESPONDENTS.

and

WELLEN OIL & CHEMICAL, INC., INTERNATIONAL SECURITY SYSTEMS, INC., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued June 12, 1985—Decided July 10, 1985.

10

Before Judges MATTHEWS, FURMAN and HAVEY.

*Karen Suter,* Deputy Attorney General, argued the cause for appellants (*Irwin I. Kimmelman,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Kenneth F. Mullaney, Jr.,* argued the cause for appellant Arlington Warehouse (*Dwyer, Connell & Lisbona,* attorneys).

*I. Leo Motiuk* argued the cause for respondent J.T. Baker Chemical Co. (*Schaff, Mahon, Motiuk, Gladstone & Conley,* attorneys; *Richard M. Conley* and *Michael W. Sozansky, Jr.,* on the brief).

*Robert J. Reilly, III,* argued the cause for respondent Miracle Adhesives (*Haggerty & Donohue,* attorneys).

*Lorelei Borland* argued the cause for respondent Ashland Chemical Co. (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Henry G. Morgan* of counsel; *John M. Bowens* on the brief).

*James T. Boyle, Jr.,* argued the cause for respondent ICC Industries (*Scanlon & Robinson,* attorneys).

*Alvin D. Hersh* argued the cause for Carboline Co. (*Wacks, Hersh, Ramsey, Berman & Kimmel,* attorneys; *Edward A. Berman* and *Philip D. Stern* on the brief).

*Kasen, Kraemer, Burns & Lovell,* attorneys for Celanese Co. (*Daniel G. Kasen* on the letter brief).

No appearance was made on behalf of respondents Solvent Chemical, Duplex Laboratories Lubrical Inc. and Alpha International Chemical.

The opinion of the court was delivered by

FURMAN, J.A.D.

Plaintiffs and defendant Arlington Warehouse appeal by our leave from summary judgment in favor of all other defendants except Wellen Oil & Chemical Inc. and International Security Systems, Inc. in an action to recover costs of over $1,200,000 incurred in the Department of Environmental Protection's (DEP) cleanup of chemical products discharged as a result of a fire at Arlington Warehouse in January 1979. Co-defendants in whose favor summary judgment was granted were the manufacturers and owners of the chemical products, which they bailed for storage at Arlington Warehouse.

Plaintiffs sought to impose liability under the Spill Compensation and Control Act (Spill Act), *N.J.S.A.* 58:10–23.11 *et seq.*, as amended by *L.* 1979, *c.* 346, § 5, against co-defendant manufacturers and bailors of the chemical products as persons "in any way responsible for any hazardous substance which the department has removed." Defendant Arlington Warehouse cross-claimed for contribution under the Spill Act.

*N.J.S.A.* 58:10–23.11g(c), as originally enacted in *L.* 1976, *c.* 141, § 8, established liability for costs of cleanup and removal of hazardous substances only against persons who had discharged them. The 1979 amendment, which became effective subsequent to the Arlington Warehouse fire, extended liability as follows:

> Any person who has discharged a hazardous substance *or is in any way responsible for any hazardous substance which the department has removed or is removing pursuant to subsection b. of section 7 of this act* shall be strictly liable, *jointly and severally*, without regard to fault, for all cleanup and removal costs. [language added by the 1979 amendment is underlined]

The cross-reference to subsection b. of section 7, also enacted in *L.* 1979, *c.* 346, is to the subsection authorizing DEP cleanup and removal of hazardous substances which were discharged prior to the effective date of the Spill Act.

Whether the chemical products discharged as a result of the Arlington Warehouse fire were "hazardous substances," as defined in the Spill Act, *N.J.S.A.* 58:10–23.11b(k), as plaintiffs

contend, has not been factually resolved. Plaintiffs allege but have not proven that all or most of them were highly toxic hazardous substances. The status of co-defendants as bailors of the chemical products was admitted on motion for summary judgment. Literally, they are persons "in any way responsible" for the bailed chemical products within the terms of amended *N.J.S.A.* 58:10–23.11g(c). At issue on appeal is whether the amended statute should be applied to them retroactively.

The trial judge interpreted the amended statute as imposing liability upon persons other than dischargers of hazardous substances only for the costs of cleanup and removal of discharges occurring prior to May 1, 1977, the effective date of the Spill Act. We do not so interpret it.

The plain reading of the amended statute is that any person who has discharged a hazardous substance or is any way responsible for any hazardous substance which DEP has cleaned up and removed is strictly liable, jointly and severally, for all cleanup and removal costs. The additional language which establishes liability for the costs of cleanup and removal of discharges occurring prior to May 1, 1977 is inapplicable on the facts. The evident statutory scheme is that both dischargers of hazardous substances and those otherwise responsible for such substances share liability for the costs of DEP cleanup and removal, whether the discharges occurred prior or subsequent to the original enactment of the Spill Act.

Co-defendant bailors urge a constitutional inhibition against that application of the amended statute because the discharge as a result of the Arlington Warehouse fire occurred in 1979, prior to the effective date of the amended statute which brought persons other than dischargers into the orbit of liability for cleanup and removal costs.

In our view, there is no such constitutional inhibition against retroactive application of the amended statute. It is remedial only, providing a remedy as an alternative to common law damages, that is, liability for the costs of DEP cleanup and removal, against persons responsible for hazardous substances

which have been discharged into waters of the State or onto lands from which they may flow or drain into waters of the State. Under constitutional principles, *see State, Dept. of Environ. Protect. v. Ventron Corp.*, 94 *N.J.* 473, 499 (1983), a remedial or procedural statute may be given retrospective effect without infringement of vested rights, provided that the new statutory remedy is for redress of a pre-existing actionable wrong.

■ By the 1979 amendment the Spill Act did not create a new substantive liability. If the chemical products stored at Arlington Warehouse are determined factually to have been hazardous substances as defined in the Spill Act, their storage in an urban area, as here, was an ultrahazardous or abnormally dangerous activity which could not be delegated by the owners of the products; as a matter of common law pre-existing the Spill Act, co-defendants as owners would be substantively liable.

Authorities holding that storage of highly flammable or highly toxic substances is an abnormally dangerous activity under common law principles include *City of Bridgeton v. B.P. Oil, Inc.*, 146 *N.J.Super.* 169, (Law Div.1976); *Langlois v. Allied Chemical Corporation*, 258 *La.* 1067, 249 *So.*2d 133 (Sup.Ct.1971); *McLane v. Northwest Natural Gas Company*, 255 *Or.* 324, 467 *P.*2d 635 (Sup.Ct.1970); *see also Restatement (Second) of Torts*, § 520 (1977).

Authorities holding that abnormally dangerous activities cannot be delegated to an independent contractor, exempting the owner from liability, include *Majestic Realty Associates v. Toti Contracting Co.*, 30 *N.J.* 425 (1959); *Loe v. Lenhardt*, 227 *Or.* 242, 362 *P.*2d 312 (Sup.Ct.1961); *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 *F.*2d 1293, 1308 (5 Cir.1982); *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 517 *F.Supp.* 314 (N.D.Ill. 1981). In the latter case, the manufacturer and shipper of acrylonitrile, a highly toxic substance, was held subject to strict liability for damage occurring when the acrylonitrile leaked from a tank car during shipment by rail. Leakage was a

hazard of the bailment for shipment as, on the appeal before us, fire was a hazard of the bailment for storage.

As stated in *Prosser and Keeton on Torts* (5 ed. 1984), § 78 at 549–550, the view in a majority of American jurisdictions is that "the hazardous enterprise, even though it be socially valuable, must pay its way, and make good the damage inflicted;" that principle has been applied to "explosives or inflammable liquids stored in quantity in the midst of a city."

Co-defendants had the benefit of ownership of their respective chemical products and shared the risk of loss from their explosion, fire, discharge, surface run-off or subsurface leaching, whether occurring on their own premises or, as here, during storage elsewhere. Under common law principles, if it is determined that the chemical products were hazardous substances as defined in the Spill Act their storage was an abnormally dangerous activity; co-defendant manufacturers and bailors were subject to strict liability.

We reverse summary judgment in favor of co-defendant manufacturers and bailors of chemical products and remand for further proceedings not inconsistent herewith. We do not retain jurisdiction.