Robert LENTZ and Mary Lentz, Plaintiffs,

v.

Carl MASON, Helen Robinson, Cathie Galanti, Fox & Lazo, Inc., Remcor, Inc., Mario J. Caparelli, Wilbur Ganary, ABC Corp. I–X, John Does I–X, Defendants.

Civil Action No. 96–2319.

United States District Court, D. New Jersey.

April 14, 1997.

---

Jeffrey T. Kampf, Jay & Kampf, Caldwell, NJ, for Plaintiffs.

Thomas P. Bracaglia, Kelly, McLaughlin & Foster, Collingswood, NJ, for Defendants, Cathie Galanti and Fox & Lazo, Inc.

Michael G. Brennan, Brennan & Bernardin, Collingswood, NJ, for Defendants, Remcor, Inc., Mario J. Caparelli and Wilbur Ganary.

## OPINION

ORLOFSKY, District Judge:

Plaintiffs, Robert and Mary Lentz, filed this action against Fox & Lazo, Inc., a real estate broker, and one of its agents, Cathie Galanti ("Galanti"), among others. Plaintiffs' complaint alleges causes of action based upon the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675, and the statutory and common law of New Jersey. Based upon the CERCLA claims, this court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over plaintiffs' state law claims is predicated upon 28 U.S.C. § 1367(a). Plaintiffs also allege complete diversity of citizenship in this matter, and an amount in controversy greater than $ 50,000.00, giving this court an independent basis for its jurisdiction over the plaintiffs' state law claims. *See* 28 U.S.C. § 1332.[1]

Fox & Lazo and Galanti have moved to dismiss the claims against them for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Furthermore, Fox & Lazo and Galanti contend that there is no diversity jurisdiction in this case. Therefore, Fox & Lazo and Galanti contend, implicitly, if not explicitly, that if they prevail on their motion to dismiss plaintiffs' CERCLA claims, this court should decline to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Because some, but not all of plaintiffs' claims meet the

---

1. Section 1332 was recently amended to raise the jurisdictional amount to $ 75,000.00. *See* Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, 110 Star. 3850 § 205(a). Because this amendment only took effect in January of this year, the relevant amount in controversy in this case remains $ 50,000.00.

standard for dismissal under Rule 12(b)(6), defendants' motion will be granted in part, and denied in part.

## I. Facts and Procedural History

The following facts are those set forth in the complaint, which must be accepted as true for the purposes of this motion to dismiss. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980).

Robert and Mary Lentz formerly resided at 1796 Pitman–Downer Road, Williamstown, Gloucester County, New Jersey (the "Property"), a property which they own and whose alleged contamination is the subject of this litigation. Plaintiffs moved from this residence to their present home in Carrollton, Georgia, sometime in 1993.

On October 22, 1993, plaintiffs entered into a real estate listing agreement (the "Listing Agreement") with Fox & Lazo for the sale or lease of the Property. Accompanying the Listing Agreement was a "Residential Profile," in which plaintiffs described the property and the rental terms. Under the Listing Agreement and Residential Profile, plaintiffs indicated that potential lessees would be required to undergo a credit check. Plaintiffs assert that these documents reflected an agreement that Fox & Lazo and/or Galanti would perform a credit check on any potential purchasers or lessees.

Fox & Lazo subsequently introduced the plaintiffs to defendant, Carl Mason ("Mason"), and Mason entered into a "Contract for Sale" and a "House Lease" for the Property. Ostensibly, Mason intended to lease the Property until he obtained a mortgage. Plaintiffs allege that no credit check on Mason was ever performed. Mason never secured a mortgage commitment and, after approximately five months at the Property, from March 5, 1994, to August 8, 1994, plaintiffs obtained a Warrant of Removal and reentered the Property.

Upon reentry, the plaintiffs found the house in disarray. In addition, plaintiffs found in the free-standing garage, located on the Property, various debris, including what they allege are "off-specification basic torpe-do tubes." Complaint ¶ 51. Plaintiffs claim that these torpedo tubes have released, are releasing, or threaten to release hazardous substances including fiberglass, nitrosamines, formaldehyde, epichlorohydrine, phenoxymethyl oxirane, and methylethylidene, each of which qualifies as a hazardous substance under CERCLA. Plaintiffs further allege that they have incurred, are incurring, and will continue to incur response costs associated with the clean-up of these toxic substances.

## II. Standard for Dismissal Under Rule 12(b)(6)

A complaint should only be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if, accepting as true all of the facts alleged in the complaint and the reasonable inferences to be drawn from those facts, no relief could be granted under any set of facts consistent with those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 71 (3d Cir.1994); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).

## III. Discussion

### A. Liability Under CERCLA

#### (1) *Introduction*

In order to prevail on their claim under CERCLA, plaintiffs must fit each defendant within one or more of the four categories of "responsible parties" identified in the statute. CERCLA defines "Covered persons" as:

(1) the owner and operator of a vessel or a facility;

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances at any facility; and, (4) any person who accepted any hazardous substances for transport to disposal or treatment facilities from which there was a release or a threatened release.

42 U.S.C. § 9607(a). A covered person may include an individual, corporation, or partner-

ship. 42 U.S.C. § 9601(21). Plaintiffs allege that Fox & Lazo and Galanti are liable as owners or "operators" of a "facility" during the time of the disposal under § 9607(a)(2), and as "arrangers" under § 9607(a)(3).

### (2) *Liability of Owners*

■ Plaintiffs contend that Fox & Lazo and Galanti may be held liable under CERCLA as "equitable owners" of the Property. Plaintiffs point to *Con–Tech Sales Defined Benefit Trust v. Cockerham,* 715 F.Supp. 701 (E.D.Pa.1989), in which the district court opined that an "equitable owner" could be liable under § 9607(a)(2) of CERCLA. *Id.* at 705. "Equitable ownership" is a principle of the common law of property. Once parties have entered into an agreement of sale for real estate, "the purchaser thereby becomes the equitable owner of the land" and certain obligations and remedies arise. *State By and Through Adams v. New Jersey Zinc Co.,* 40 N.J. 560, 576, 193 A.2d 244 (1963).

■ The *Con–Tech* court did not declare, as plaintiffs have stated in their brief, "that an entity encumbered with the exclusive obligation to manage and develop the property may be deemed an 'equitable owner' for purposes of CERCLA." Plaintiffs' Brief at 10. Contrary to plaintiffs' assertion, the *Con–Tech* court began with the apparently undisputed assumption that the party in question was an "equitable owner" under the common law. *Id.* at 703. The court merely opined on the potential effect of "equitable ownership" in a CERCLA action. Plaintiffs have not alleged facts from which it may be concluded that Fox & Lazo or Galanti were ever "equitable owners" of the Property.

■ CERCLA "owner" liability may be extended to a lessee, as plaintiffs point out, when the lessee participates in the disposal of hazardous wastes. *United States v. South Carolina Recycling and Disposal, Inc.,* 653 F.Supp. 984, 1003 (D.S.C.1984), *aff'd in part, rev'd in part sub nom. United States v. Monsanto,* 858 F.2d 160 (4th Cir.1988). Fox & Lazo and Galanti, however, are not lessees, nor are they alleged to have participated in any decision involving the disposal of hazardous wastes on the Property. Furthermore, in *South Carolina Recycling,* the district court concluded that the lessee, a chemical manufacturer, was liable as an "owner," "operator," "arranger" and "transporter" under CERCLA. This litany suggests that the case did not turn on the manufacturer's status as an "equitable owner," but rather, on its involvement as a lessee in the operation of the contaminated site. Therefore, one cannot draw from *South Carolina Recycling,* the conclusion that a lessee is automatically liable as an "equitable owner," absent other indicia of participation in the alleged hazardous waste disposal.

Plaintiffs' reliance upon *City of Phoenix v. Garbage Services Co.,* 816 F.Supp. 564, 567–68 (D.Ariz.1993), is equally unavailing. In *City of Phoenix,* a trustee was deemed to qualify as an "owner," simply because it held legal title to the contaminated site, even though the trustee was never involved in the day-to-day operation of the contaminated waste site. Simply put, *City of Phoenix* does not address "equitable ownership" under CERCLA, but rather, speaks to *actual* ownership. In this case, there is no allegation in plaintiffs' complaint that Fox & Lazo or Galanti ever held legal title to the Property, nor is there any other basis for "ownership" liability under CERCLA.

### (3) *Operator Liability*

■ A person who does not hold title to contaminated property may still be liable as an "operator" if he or she participates in the disposal of hazardous wastes at the site, or exercises substantial, actual control over the day-to-day operations of the site. *See Lansford–Coaldale Water Auth. v. Tonolli Corp.,* 4 F.3d 1209, 1220 (3d Cir.1993).

■ The inquiry into "substantial control" requires this court to "look to the extent of the defendant[s]' ... participation in the alleged wrongful conduct." *Riverside Market Development Corp. v. International Bldg. Products, Inc.,* 931 F.2d 327, 330 (5th Cir.), *cert. denied,* 502 U.S. 1004, 112 S.Ct. 636, 116 L.Ed.2d 654 (1991). Plaintiffs correctly assert that this is generally a "fact-intensive inquiry, involving consideration of the totality of the circumstances presented." *Lansford–Coaldale,* 4 F.3d at 1222 (citation

omitted). In this case, however, plaintiffs do not point to any facts which they expect to arise in discovery which might demonstrate "actual control" by Fox & Lazo and Galanti of the decision to dispose of hazardous waste at the Property. Rather, plaintiffs seek to hold Fox & Lazo and Galanti vicariously responsible for their alleged failure to prevent Mason from disposing of the torpedo tubes on the property.

There is apparently no reported precedent for holding a realtor responsible as an "operator" under CERCLA. Indeed, plaintiffs have cited no binding or persuasive authority for an extension of "operator" liability under these circumstances. Even in cases in which the question presented is the extent of responsibility of a sibling, or parent, corporation for the alleged actions of a related company, the Third Circuit requires a showing of "actual control." It is clear to this court that the question of liability of related companies is qualitatively different from the potential liability of a realtor for the actions of its client's lessee. However, even if the same standard applied to Fox & Lazo and Galanti as applies to a parent or sibling corporation, plaintiffs do not allege facts which would bring Fox & Lazo and Galanti within the confines of § 9607(a)(2) "operator" liability.

In *Lansford–Coaldale,* the Third Circuit rejected the broad "authority to control" test, which has been applied in other circuits and which imposes CERCLA "operator" liability on a related company whenever that company "had the capability to control, even if it was never utilized." *Id.* at 1221. Instead, the Third Circuit adopted the "actual control" standard, which requires " 'actual participation and control' over the other corporations's [sic] decision-making." *Id.* at 1222 (quoting *CPC Int'l v. Aerojet–General Corp.,* 777 F.Supp. 549 (W.D.Mich.1991)). See *also United States v. Kayser–Roth Corp.,* 910 F.2d 24 (1st Cir.1990). Here there is no allegation of a corporate relationship, or any other fiduciary or even quasi-fiduciary relationship between the realtor and the Lentzes' tenant, which would bring Fox & Lazo and Galanti within the rule of *Lansford–Coaldale.*

Notably, plaintiffs do not even allege that Fox & Lazo and Galanti knew of the disposal of hazardous waste at the Property. The absence of such an allegation is particularly telling, because mere knowledge of waste disposal activities, hazardous or otherwise, although a prerequisite to "operator" liability, does not, without more, suffice to establish CERCLA "operator" liability. CERCLA casts its net wide, but it does not draw in persons or entities who have no connection to hazardous waste disposal, other than the knowledge that it is going on. Even under the broad "authority to control" standard of "operator" liability, which was rejected by the Third Circuit in *Lansford–Coaldale,* operator liability will not attach to a party who had no managerial or administrative responsibility for waste disposal. *City of Phoenix,* 816 F.Supp. at 567 (cited in Plaintiffs' Brief at 10). In this case, even an allegation of knowledge of the waste disposal activity is lacking.

Unless it can be alleged, and it has not been, that Fox & Lazo and Galanti had the power to control the disposal activities allegedly undertaken by Mason, they cannot be liable as "operators." Accordingly, Fox & Lazo and Galanti cannot be held liable under § 9607(a)(2) as either "owners" or "operators" of a hazardous waste site.

### (4) *Arranger Liability*

Section 9607(a)(3) imposes CERCLA liability upon "any person who by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances at any facility." Plaintiffs' claim that Fox & Lazo and Galanti qualify as "covered persons" under this section is without merit. Plaintiffs have not cited, and this court's independent research has failed to reveal, any case in which a defendant who is not even alleged to have known about the disposal of hazardous wastes has, nonetheless, been deemed to have "arranged for the disposal" of such hazardous wastes. At a minimum, knowledge of the waste disposal arrangement must be alleged in order to trigger "arranger" liability. Perhaps an "arranger" need not know that the wastes disposed of are hazardous, but the statute is clear that the

arranger must know of the disposal of some waste materials.

█ Plaintiffs contend, in their brief, that Fox & Lazo and Galanti had "actual control over the use or occupancy of the premises" sufficient to "constitute[ ] 'arrangement' as defined by statute and case law." Plaintiffs' Brief at 14. The complaint, however, alleges no "control over the use" of the Property, and no such control can be inferred from the fact that Fox & Lazo and Galanti acted as plaintiffs' agent in the lease to Mason. To hold that Fox & Lazo and Galanti "arranged" for the disposal of hazardous substances under these circumstances would expand "arranger" liability to absurd proportions. Therefore, all claims against Fox & Lazo and Galanti based upon CERCLA must be dismissed.

## B. Supplemental Jurisdiction

Fox & Lazo and Galanti contend that, once this court dismisses the CERCLA claims against them, plaintiffs' state law claims against them should be dismissed for lack of subject matter jurisdiction. Defendants assert that this court would have neither federal question jurisdiction under § 1331, nor diversity jurisdiction under § 1332. *See* Defendants' Brief at 10–13.

In a case such as this, in which the federal question jurisdiction of Section 1331 has been invoked, a district court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This supplemental jurisdiction extends to "claims that involve the joinder ... of additional parties." *Id.*

█ With the insertion of this language into Title 28 in 1990, Congress expressly overturned *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), an action that originally had been brought against a single defendant based upon federal question jurisdiction. In *Finley,* the Supreme Court had stated that the district court lacked subject matter jurisdiction over purely state law claims asserted against additional defendants. Since the amendment, therefore, it is clear that this court may exercise supplemental jurisdiction over state law claims involving defendants against whom no federal cause of action is stated, as long as a federal cause of action is stated against another defendant, and the state law claims satisfy the "same case or controversy" requirement of Article III.

█ To determine whether a claim is part of the "same case or controversy," this court looks to whether "[t]he state and federal claims ... derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Thus, "if considered without regard to their state or federal character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then ... there is *power* in the federal court to hear the whole." *Id.* Plaintiffs allege that they suffered damages by reason of the omissions of Fox & Lazo and Galanti combined with the actions of the other defendants. Their agreement to sell or lease their Williamstown property and its alleged subsequent contamination by Mason are common facts for purposes of Article III's single case or controversy requirement.

Nevertheless, when all federal claims against a party have been eliminated from a case, the district court may, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). *Mark v. Borough of Hatboro,* 856 F.Supp. 966, (E.D.Pa.1994), *aff'd,* 51 F.3d 1137 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995).

In deciding whether to dismiss pendent state-law claims, a district court must take into account principles of judicial economy, convenience, and fairness to the litigants. *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) (citing *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993), and *Lovell Mfg. v. Export–Import Bank of the United States,* 843 F.2d 725 (3d Cir.1988)). These considerations are the same that were identified by the Supreme Court as entering into the decision whether to exercise "pendent jurisdic-

tion" in a case involving both federal and state claims. *See United Mine Workers*, 383 U.S. at 726, 86 S.Ct. at 1139.

I am convinced that in this case, judicial economy would not be served by the dismissal of the remaining state law claims against Fox & Lazo and Galanti. Insofar as Section 113 of CERCLA confers exclusive jurisdiction for civil suits arising under the statute upon the United States District Courts, *see Manor Care v. Yaskin*, 950 F.2d 122, 127 (3d Cir.1991), there would be no efficiency in dismissing the state law claims against Fox & Lazo and Galanti. On the contrary, if these claims were dismissed without prejudice, plaintiffs would be required to bring a second action against these defendants in the New Jersey state courts to enforce their rights, while continuing to pursue the remaining defendants in this court. Without expressing an opinion as to the potential applicability, if any, of New Jersey's Entire Controversy Doctrine to this case, the Doctrine is a resounding expression of the State's abhorrence of "fragmented, multiple and duplicative litigation." *Mystic Isle Development Corp. v. Perskie & Nehmad*, 142 N.J. 310, 322, 662 A.2d 523 (1995) (citations omitted). I am loathe to contribute to duplicative and fragmented litigation. Because there is no apparent offsetting benefit to dismissal, judicial economy alone mandates the exercise of supplemental jurisdiction in this case.

Having concluded that this court may, and should, exercise supplemental jurisdiction over the state law claims against Fox & Lazo and Galanti, it is unnecessary to decide whether there is an independent basis for subject matter jurisdiction in this case based upon diversity of citizenship.

### C. The New Jersey Spill Act

Defendants, Fox & Lazo and Galanti, also move to dismiss plaintiffs' claims under the New Jersey Spill Compensation and Control Act (the "Spill Act"). N.J. Stat. Ann. §§ 58:10–23.11 to 10:23.24 (as amended). In support, Fox & Lazo and Galanti rely on the same arguments they offer in support of dismissal of the plaintiffs' CERCLA claims. Plaintiffs agree that the standards for liability under the Spill Act are the same as under CERCLA. *See Fishbein Family Partnership v. PPG Indus.*, 871 F.Supp. 764, 772 (D.N.J.1994); *New Jersey DEPE v. Gloucester Environmental Management Svcs.*, 821 F.Supp. 999, 1009 (D.N.J.1993). *Compare* Plaintiffs' Brief at 17, *citing Fishbein*, with Defendants' Brief at 6, *citing Fishbein*.

▮ Therefore, plaintiffs cannot state a claim against these defendants under the Spill Act unless they can establish that they may be liable under CERCLA. This conclusion is supported by New Jersey's rejection, in a Spill Act case, of vicarious liability of a principal under an agency theory, when no actual control over the disposal of the hazardous material by the principal, or reliance on the apparent authority granted by the principal, was demonstrated. *See Bahrle v. Exxon Corp.*, 279 N.J.Super. 5, 26–27, 652 A.2d 178 (App.Div.1995). For these reasons, plaintiffs' claims under the Spill Act will be dismissed.

### D. Private Nuisance

Plaintiffs seek to hold Fox & Lazo and Galanti responsible under New Jersey's common law of private nuisance. Plaintiffs contend that the actions of Fox & Lazo and Galanti in "accepting Mason as a tenant and possible purchaser of the property,. were the proximate cause of the damage suffered by the Lentz' [sic]." Plaintiffs' Brief at 18.

▮ A defendant is only responsible in damages for the natural and probable consequence of his or her acts. The doctrine of proximate causation is equally applicable to an action alleging nuisance. *Rickards v. Sun Oil Co.*, 23 N.J.Misc. 89, 93, 41 A.2d 267 (N.J.Sup.Ct.1945). Plaintiffs contend for a theory of "but for" causation. The problem with the application of "but for" causation in this instance is that its reach is limitless. *See Seats v. Hooper*, Civ. Action No. 96–3244, 1997 WL 39564, at *3 (E.D.Pa. Jan.21, 1997). The Lentzes could as easily state a claim against Robert Lentz's employer who transferred him to Georgia because "but for" the transfer, plaintiffs would presumably still be living on their property in Williamstown. Moreover, plaintiffs cite no caselaw in sup-

port of their position that a party who neither owns property on which a nuisance is located, nor creates that nuisance, may nevertheless be held liable under this tort theory. Accordingly, this court will dismiss plaintiffs' claims for private nuisance against Fox & Lazo and Galanti.

### E. Ultrahazardous Activity

Plaintiffs fail to state a claim in strict liability for "ultrahazardous activity" for precisely the same reasons they cannot state a claim for private nuisance.

■■■ The general principle of strict liability for ultrahazardous activities states that: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Restatement (Second) of Torts* § 519. (1976). While there is authority in New Jersey holding that the storage of highly flammable or highly toxic substances is an abnormally dangerous activity under common law principles, *see New Jersey Dept. of Envir. Protection v. Arlington Whse.,* 203 N.J.Super. 9, 14, 495 A.2d 882 (App.Div.1985) (collecting cases), whether the storage of torpedo tubes is, in the circumstances of this case, an abnormally dangerous activity is an issue which need not be decided at this time.

■■■ Plaintiff has cited no cases imposing strict tort liability for ultrahazardous activity on a party who is not even alleged to have been connected with the abnormally dangerous activity. It is implicit in the Restatement's formulation of this tort that the liability attaches only to those who "carry on" abnormally dangerous activities. There is no allegation in the complaint that Fox & Lazo and Galanti "carried on" the activity of storing torpedo tubes at the Property. Plaintiffs seek to impose liability on parties whose connection to the alleged harmful conduct is too remote to support liability as a matter of law.

2. Presumably, this is the reason plaintiffs set forth a claim under § 9613 in the Eighth and

■■■ Having disposed of the two tort claims set forth in plaintiffs' complaint, it behooves this court to address plaintiffs' "claims," contained in the Eleventh Count of the complaint, under New Jersey's Joint Tortfeasors Contribution Act. N.J. Stat. Ann. §§ 2A:53A–1 to 53A–29 (as amended). This Act preserves the common law right to contribution which traditionally existed between joint tortfeasors. A common law cause of action for contribution arises "when two or more persons become liable in tort to the same person for the same harm." Restatement (Second) of Torts § 886A(1) (1977). Thus, contribution is a right of one liable party against another. The Joint Tortfeasors Contribution Act, however, creates no rights in a plaintiff.

Were the Lentzes determined to be potentially responsible parties under section 9607(a) of CERCLA, an issue which this court need not, and does not address at this time, they would have a statutory right to contribution pursuant to 42 U.S.C. § 9613(f)(1). In this event, however, plaintiffs would have a claim directly under the applicable provisions of CERCLA, not a claim under New Jersey's Joint Tortfeasors Contribution Act.[2] Accordingly, the Eleventh Count of plaintiffs' complaint will be dismissed.

### F. The Remaining Claims

The Third, Fourth and Fifth Counts of plaintiffs' complaint set forth claims against Fox & Lazo and Galanti arising out of their alleged duty to monitor Mason's financial status. Plaintiffs assert that a credit check, and/or an investigation of Mason's mortgage application would have revealed problems which should have led Fox & Lazo and Galanti to prevent Mason from taking up residence at the Property. Defendants contend that these are essentially claims for breach of contract, and that the Listing Agreement, the relevant contract, did not oblige Fox & Lazo or Galanti to complete a credit check on Mason.

Ninth Counts of their complaint.

Plaintiffs allege that, as part of the Listing Agreement, they "requested that a credit check be performed on any potential purchasers or lessees." Complaint, Third Count, ¶ 29. Plaintiffs state, on information and belief, that "neither defendant Galanti nor anybody at Galanti's request, nor anybody at Fox & Lazo did a credit check on Mason as required under the Listing Agreement." Complaint, Third Count, ¶ 32. In the subsequent count, plaintiffs reallege that "Galanti failed to perform a credit check on defendant Mason as required under the listing Agreement," Complaint, Fourth Count, ¶ 37, and state, again upon information and belief, that "Galanti never investigated or performed a due diligence check on the alleged mortgage company hired by defendant Mason," Complaint, Fourth Count, ¶ 38. Plaintiffs also complain that "Galanti never took any affirmative steps to determine if Mason was making any efforts to obtain a mortgage." Complaint, Fourth Count, ¶ 39. Finally, in paragraph 40, plaintiffs state that they "relied to their detriment upon Galanti's representations that she had the skill and expertise to handle the sale and/or lease of the [Property] and would act in the manner expected of a real estate broker with ordinary skills and experience." Complaint, Fourth Count, ¶ 40.

These allegations, especially those contained in paragraph forty, although somewhat perplexing, suggest that plaintiffs may assert a claim for negligence, in addition to breach of contract. Drawing all reasonable inferences from the allegations in the complaint in the light most favorable to the plaintiffs, as this court must on a motion to dismiss, the complaint can be read to allege that Fox & Lazo and Galanti breached a standard of care applicable to realtors and their agents, and that plaintiffs suffered damages as a result.

■ In New Jersey, a realtor is a fiduciary of the seller, and its duties to its client may exceed those specifically set forth in the listing agreement. *See Ellsworth Dobbs, Inc. v. Johnson,* 50 N.J. 528, 553, 236 A.2d 843 (1967). Even after a contract of sale has been executed, a realtor is obliged "to periodically review the status of the contract, check to see if the buyers are attending to their obligations under the contract, and, at least when the realtor has introduced the buyers to the mortgagee, periodically communicate with the bank to ascertain if the application is proceeding smoothly. If there is a causal connection between the realtor's failure to oversee the transaction and the loss sustained by the sellers, the realtor may be held liable." *Farrell v. Janik,* 225 N.J.Super. 282, 288, 542 A.2d 59 (L.Div.1988) (citing *Sullivan v. Jefferson, Jefferson & Vaida,* 167 N.J.Super. 282, 400 A.2d 836 (App.Div.1979)). As the court in *Farrell* stated, when a realtor holds itself out "as a specialist in the sale of real estate it [is] required to employ not merely the skill of a salesperson, but that special degree of skill normally possessed by the average realtor licensed in New Jersey who has devoted special study and experience in the field of real estate sales." *Id.* at 289, 542 A.2d 59. The Third, Fourth and Fifth Counts may not be dismissed, therefore, because, on a motion made pursuant to Rule 12(b)(6), this court may only dismiss if no relief could be granted under any set of facts consistent with the allegations of the complaint. *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02.

■ Furthermore, it would be premature to declare that no breach of the Listing Agreement could be proven consistent with these allegations. Fox & Lazo and Galanti point out that the Listing Agreement itself does not oblige Fox & Lazo to perform a "credit check" or to "investigate" Mason's financial status, as neither is specifically mentioned in the agreement. Furthermore, the Residential Profile, on which plaintiffs indicated that prospective lessees would be required to undergo a credit check, does not state that Fox & Lazo or its agents are obliged to arrange for such a credit check. Nevertheless, paragraph forty alleges that plaintiffs relied on certain "representations" made by Galanti. If it could be shown that these representations included a statement to the effect that Fox & Lazo and/or Galanti would assume responsibility for the performance of the credit check requested in the Residential Profile, plaintiffs could make out

a *prima facie* claim for breach of contract. In light of the allegations contained in the Third, Fourth and Fifth Counts of plaintiffs' complaint, the motion of Fox & Lazo and Galanti to dismiss these counts will be denied.[3]

## IV. Conclusion

Because plaintiffs' complaint fails to state a claim against defendants, Fox & Lazo and Galanti, for violations of CERCLA, the New Jersey Spill Act, or for private nuisance or strict liability under the common law of New Jersey, these claims will be dismissed as against Fox & Lazo and Galanti. The Eleventh Count of plaintiffs' complaint, which purports to state a claim under New Jersey's Joint Tortfeasors Contribution Act, will also be dismissed. Insofar as Fox & Lazo and Galanti seek to dismiss the claims contained in the Third, Fourth and Fifth Counts of plaintiffs' complaint, their motion will be denied. The court will enter an appropriate order.

### ORDER

This matter having come before this Court on the motion of Defendants, Cathie Galanti and Fox & Lazo, Inc., to dismiss Plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(6), Jeffrey T. Kampf, Esq., of Jay & Kampf, appearing on behalf of the Plaintiffs, and Thomas P. Bracaglia, Esq., of Kelly, McLaughlin & Foster, appearing on behalf of Defendants, Cathie Galanti and Fox & Lazo, Inc.; and,

The Court having considered the Complaint, and the Listing Agreement and Residential Profile referenced in the Complaint, as well as the Briefs filed in support of and in opposition to this motion, for the reasons set forth in this Court's Opinion filed concurrently with this Order;

It is on this 14th day of April, 1997, ORDERED that:

1. The motion of Defendants, Cathie Galanti and Fox & Lazo, Inc., to dismiss Plain-

tiffs' claims for violations of CERCLA and the New Jersey Spill Act, as well as plaintiffs' claims for private nuisance and strict liability for ultrahazardous activity, all contained in the Seventh, Eighth, Ninth, Tenth, Twelfth, Thirteenth, Fourteenth and Fifteenth Counts of Plaintiffs' Complaint, is GRANTED;

2. Plaintiffs' claim under New Jersey's Joint Tortfeasors Contribution Act, contained in the Eleventh Count of plaintiffs' complaint, is DISMISSED;

3. The motion of Defendants, Cathie Galanti and Fox & Lazo, Inc., to dismiss Plaintiffs' claims contained in the Third, Fourth and Fifth Counts of Plaintiffs' Complaint is DENIED.

---

3. Fox & Lazo and Galanti also contend that plaintiffs cannot seek damages for emotional or physical injury for breach of contract. Defendants' Brief at 10, *citing Coyle v. Englander's,* 199 N.J.Super. 212, 488 A.2d 1083 (App.Div.

1985); *Fiore v. Sears, Roebuck & Co.,* 144 N.J.Super. 74, 364 A.2d 572 (L.Div.1976). Because these counts, liberally construed, are not limited to contract claims, it is unnecessary to rule on this issue at this time.