695 A.2d 747

HANDY & HARMAN AND HANDY & HARMAN ELECTRONIC MATERIALS CORPORATION, PETITIONERS–RESPONDENTS, v. BOROUGH OF PARK RIDGE, CLAIMANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 3, 1997—Decided June 27, 1997.

Before Judges MICHELS, MUIR, Jr., and COBURN, JJ.

*Walter G. Reinhard* argued the cause for appellant (*Norris, McLaughlin & Marcus*, attorneys; *Mr. Reinhard* and *John J.*

*D'Anton*, Borough Attorney for the Borough of Park Ridge, of counsel; *Mr. Reinhard* and *Martha N. Donovan*, on the brief).

*John M. Agnello* argued the cause for respondents (*Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein*, attorneys; *Mr. Agnello*, of counsel; *Mr. Agnello* and *David G. Gilfillan*, on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Claimant Borough of Park Ridge (Park Ridge) appeals from an Arbitration Decision of an Administrative Law Judge that denied its claim for reimbursement from the New Jersey Spill Compensation Fund (Spill Fund) established by *N.J.S.A.* 58:10–23.11i pursuant to the provisions of the New Jersey Spill Compensation and Control Act (Spill Act), *N.J.S.A.* 58:10–23.11 to –23.24.

Briefly, Park Ridge owns and operates a drinking water supply system, drawing from nineteen underground wells, which supplies Park Ridge and Woodcliff Lake residents. In 1983, Park Ridge learned that wells one, two, and seventeen were contaminated with volatile organic compounds including trichloroethylene (TCE) and perchloroethylene (PCE). As a result, in December 1985, Park Ridge filed a Spill Fund damage claim (No. H–86–24). No parties allegedly responsible for the contamination were named in the claim form. The Spill Fund administrator eventually settled the claim in about 1990 by paying Park Ridge $332,156.83.

In 1985, petitioners Handy & Harman and Handy & Harman Electronic Materials Corporation (hereinafter collectively referred to as Handy & Harman) bought property on which they and Plessey, Inc. had operated a metal stamping plant since 1966. This purchase triggered the Environmental Cleanup Responsibility Act (ECRA), *N.J.S.A.* 13:1K–6 to –13, now called the Industrial Site Recovery Act (ISRA), pursuant to which Handy & Harman was required to ensure that the property was environmentally sound. A survey of the area revealed groundwater pollution. On

August 7, 1992, the Department of Environmental Protection (DEP) approved a groundwater cleanup plan submitted by Handy & Harman pursuant to ECRA. The record, however, does not reflect the current status of the ECRA/ISRA cleanup.

In December 1992, Park Ridge filed a Spill Act claim related to volatile organic compound contamination found in wells three through eight, ten, and thirteen. By this time, Park Ridge had installed equipment to purify the water on wells three through eight, ten, and thirteen. Handy & Harman was named a responsible party in the claim form. That same month and pursuant to a permit issued by the DEP, well nineteen was drilled and tested for contamination. The tests revealed volatile organic contamination in well nineteen. Park Ridge subsequently installed certain equipment to remove the contamination.

In March 1993, Park Ridge filed another claim, No. 92–0128–0002, seeking $253,000 for contamination in well nineteen, which claim is the subject of this appeal. The claim named Handy & Harman as a responsible party. Later, several other potentially responsible parties were discovered, including Plessey, Inc.; Plessey Materials Corp.; Cycle Chem., Inc. (formerly Perk Chemical); Park Ridge Hye Partners; Mid–Park Hye Corporation and Sarkis Gabrellian; and Buymar Corporation.

The Environmental Claims Administration of the DEP (ECA) subsequently sent a letter to Handy & Harman indicating that the well nineteen "claim is valid under the auspices of the [Spill Act]." Handy & Harman requested arbitration concerning both the amount and validity of the claim pursuant to *N.J.S.A.* 58:10–23.11n(a) and *N.J.A.C.* 7:1J–8.2. At the conclusion of the proceedings, the arbitrator, Administrative Law Judge Richard McGill, denied Park Ridge's claim with respect to well nineteen, holding that Park Ridge failed to prove that it had been damaged by a discharge which occurred after April 1, 1977, the effective date of the Spill Act. In reaching this conclusion, the arbitrator relied upon *Atlantic City Municipal Utilities Authority v. Hunt*, 210 *N.J.Super.* 76, 509 *A.*2d 225 (App.Div.1986), and *Township of*

*South Orange Village v. Hunt,* 210 *N.J.Super.* 407, 510 *A.*2d 62 (App.Div.1986), and, in part, held:

> Park Ridge emphasizes that in both *Atlantic City* and *South Orange* there was evidence of pre-Act discharges. While it is true that there is no clear evidence of a pre-Act discharge in this case, it would also be accurate to say that there is no reliable evidence that the discharge occurred after April 1, 1977.
>
> Park Ridge cites test results which show contamination in its wells from 1983 to 1993. The facts in *Atlantic City* demonstrate that contamination of the well water is not a reliable indication that the discharge occurred at substantially the same time. Price's Landfill received hazardous chemicals from 1971 through 1976. An EPA study in 1979 found that the contamination would reach the municipal wells in twelve years. These dates imply that it could take from fifteen to twenty years for the discharged substances to reach the wells. While each case may be different, the facts in *Atlantic City* clearly imply that the date on which the contamination is detected is not a reliable indication that the discharge occurred at a time in close proximity thereto.
>
> This case is very similar to *South Orange* in that it is impossible to tell on the basis of the evidence presented whether the contamination has been caused by the continuing migration of pre-Act discharges or by post-Act discharges. Park Ridge would assume based upon test results from 1983 to 1993 not only that there was a post-Act discharge but also that there was no pre-Act discharge. This approach, however, does not satisfy the requirement of *South Orange* to segregate and distinguish between damages caused by post-Act discharges and those caused by pre-Act discharges.
>
> To summarize, the Spill Fund provides compensation only for post-Act discharges. Park Ridge as the claimant has the burden of proof as to all requirements for eligibility under the Spill Act and pertinent regulations. *N.J.A.C.* 7:1J–2.3. In this case, Park Ridge has not produced sufficient evidence to establish the extent to which the contamination of well no. 19 was the result of a post-Act discharge. Under the circumstances, I must **CONCLUDE** that Park Ridge has not established the validity of its claim with respect to well no. 19.

Park Ridge seeks a reversal of the Arbitration Decision and urges us to exercise our original jurisdiction and find that its Spill Fund claim was valid and that it was entitled to damages of $298,000. Park Ridge contends that (1) the Spill Fund Administrator's decision that its claim was valid was entitled to great deference by the arbitrator; (2) absent direct evidence of a discharge that pre-dated the Spill Act, it cannot be required to prove that its cleanup costs are the result of a post-Act discharge; (3) the Spill Act is retroactive; and (4) we should exercise our original jurisdiction to determine the proper amount of the claim. We disagree and affirm.

We are satisfied that the Arbitration Decision was not arbitrary, capricious, or unreasonable; was supported by sufficient credible evidence in the record; and did not violate the legislative policies expressed or fairly implied in the statutory scheme administered by the Spill Act. *See Public Serv. Elec. & Gas Co. v. New Jersey Dep't of Envtl. Protection,* 101 *N.J.* 95, 103, 501 *A.2d* 125 (1985); *Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.2d* 686 (1980); *Campbell v. Department of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.2d* 712 (1963); *Valdes v. New Jersey State Bd. of Med. Examiners,* 205 *N.J.Super.* 398, 404, 501 *A.2d* 166 (App.Div.1985); *In re Doyle,* 201 *N.J.Super.* 347, 349–50, 493 *A.2d* 54 (App.Div. 1985); *Dore v. Bedminster Tp. Bd. of Ed.,* 185 *N.J.Super.* 447, 453, 449 *A.2d* 547 (App.Div.1982); *In re Boardwalk Regency Corp. for a Casino License,* 180 *N.J.Super.* 324, 333–35, 434 *A.2d* 1111 (App.Div.1981), *modified,* 90 *N.J.* 361, 447 *A.2d* 1335 (1982), *appeal dismissed sub nom. Perlman v. Attorney General of New Jersey,* 459 *U.S.* 1081, 103 *S.Ct.* 562, 74 *L.Ed.2d* 927 (1982). *See also R.* 2:11–3(e)(1)(D). Moreover, all of the issues of law raised by Park Ridge are clearly without merit. *R.* 2:11–3(e)(1)(E).

■ Contrary to Park Ridge's contention, the DEP's initial acceptance of its claim as valid did not foreclose the arbitrator from concluding that the claim was in fact not valid and, therefore, from dismissing the claim. The Spill Fund is strictly liable for all cleanup and removal costs and all damages resulting from a discharge of hazardous substances. *N.J.S.A.* 58:10–23.11g(a). A claim for compensation from the Fund must be submitted to the chief executive of the Spill Fund within one year after the date of discovery of damages due to a discharge of hazardous substances, *N.J.S.A.* 58:10–23.11k; *N.J.A.C.* 7:1J–6.1, and the initial claim form is required to contain certain detailed information regarding the alleged damages, *N.J.A.C.* 7:1J–6.3. The DEP may settle the claim with the claimant unless a party contests the "amount or validity of the claim" and requests arbitration. *N.J.A.C.* 7:1J–8.3(a)(3). Here, Handy & Harman requested arbitration to contest both the amount and validity of the claim.

The ECA sent a letter to Handy & Harman indicating that the "claim is valid under the auspices of the [Spill Act]." Park Ridge argues that this statement amounts to a conclusive finding by the DEP that the claim was valid and that the arbitrator exceeded his authority by finding otherwise. However, if the claim is referred to arbitration in accordance with *N.J.A.C.* 7:1J–9.1, the purpose and duty of the arbitrator is to determine the "amount or validity of the claim." *N.J.A.C.* 7:1J–8.2. *Accord N.J.S.A.* 58:10–23.11n(a). Here, the arbitrator was called upon to determine both the amount and validity of the claim. To preclude the arbitrator from determining the validity and the amount of a claim would render the statute meaningless. This result runs counter to the maxim that legislation should be construed to give meaning to all words therein. *New Jersey Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth,* 147 *N.J.* 171, 179–80, 685 *A.*2d 1309 (1996), *cert. denied,* —— *U.S.* ——, 117 *S.Ct.* 1845, 137 *L.Ed.*2d 1048 (1997).

Moreover, the DEP's initial, preliminary conclusion that the claim was "valid" cannot be construed to foreclose the arbitrator from fulfilling his or her duties as prescribed in the Spill Act and implementing regulations. In *Enertron Indus., Inc. v. Mack,* 242 *N.J.Super.* 83, 93, 576 *A.*2d 28 (App.Div.1990), we held that when a party demands arbitration pursuant to *N.J.S.A.* 58:10–23.11n, the DEP must cede authority to the arbitrator to determine the validity of the claim. In reaching this decision, we emphasized that the "statute states no exceptions in ceding to the board of arbitration all contests as to the 'validity' of claims." *Ibid.* Stated simply, the DEP's preliminary determination regarding the validity of a claim does not bind the arbitrator.

■ Turning to Park Ridge's argument concerning the application of the Spill Act to its claim, we emphasize that the effective date of the Spill Act was April 1, 1977, "the first day of the third month after enactment [January 6, 1977]." *L.* 1976, *c.* 141, § 29. " 'Pre–Act discharge' means a discharge of a hazardous substance which occurred before April 1, 1977." *N.J.A.C.* 7:1J–1.4. While

some portions of the Spill Act have been held to be retroactive, other portions have not. For example, *N.J.S.A.* 58:10–23.11g(c) imposes strict joint and several liability without regard to fault on responsible parties even for pre-Act discharges. *See State, Dep't of Envtl. Protection v. Ventron Corp.,* 94 *N.J.* 473, 497–98, 468 *A.*2d 150 (1983); *State, Dep't of Envtl. Protection, Spill Compensation Fund v. Arlington Warehouse,* 203 *N.J.Super.* 9, 13–14, 495 *A.*2d 882 (App.Div.1985); *Department of Transp. v. PSC Resources, Inc.,* 175 *N.J.Super.* 447, 465–66, 419 *A.*2d 1151 (Law Div.1980). *See also Morton Int'l, Inc. v. General Accident Ins. Co. of Am.,* 134 *N.J.* 1, 79, 629 *A.*2d 831 (1993), *cert. denied,* 512 *U.S.* 1245, 114 *S.Ct.* 2764, 129 *L.Ed.*2d 878 (1994) (noting that state and federal statutes like the Spill Act provide that "joint and several liability for cleanup costs may be imposed retroactively and without regard to fault"). Also, the Spill Act lien provision, *N.J.S.A.* 58:10–23.11f(f), is retroactive such that a Spill Act lien has priority over liens arising prior to the effective date of the Act. *Kessler v. Tarrats,* 194 *N.J.Super.* 136, 142–43, 476 *A.*2d 326 (App.Div.1984); *Simon v. Oldmans Township,* 203 *N.J.Super.* 365, 372–73, 497 *A.*2d 204 (Ch.Div.1985).

On the other hand, other portions of the Spill Act have been held to be prospective only. For example, the Act's penalty provisions are prospective only. *State, Dep't of Envtl. Protection v. J.T. Baker Co.,* 234 *N.J.Super.* 234, 246–47, 560 *A.*2d 739 (Ch.Div.1989), *aff'd o.b.,* 246 *N.J.Super.* 224, 587 *A.*2d 279 (App. Div.1991). Additionally, we have held that the Spill Fund cannot be held liable pursuant to *N.J.S.A.* 58:10–23.11g(a) for damages caused by discharges occurring before the effective date of the Spill Act. *Atlantic City Mun. Util. Auth. v. Hunt, supra,* 210 *N.J.Super.* at 86–95, 509 *A.*2d 225; *Township of South Orange Village v. Hunt, supra,* 210 *N.J.Super.* at 417–19, 510 *A.*2d 62.

Moreover, the Spill Act does not contain any language explicitly stating that the entire Act was intended to be retroactive. Neither *N.J.S.A.* 58:10–23.11 to –23.24, nor the legislative history reveals or even suggests that the Legislature intended that

*N.J.S.A.* 58:10–23.11g(a) was to apply retroactively. *Sponsor's Statement, A–1903* (Dec. 13, 1976); *Assembly Agriculture and Environment Committee Statement, S–1409* (Nov. 8, 1976); *Assembly Agriculture and Environment Committee Statement, A–1903* (Nov. 8, 1976); *Senate Energy and Environment Committee Statement, S–1409* (July 12, 1976); *Sponsor's Statement, A–1903* (1976). To the contrary, the fact that the effective date of the Act was postponed for more than three months weighs in favor of prospective application of the entire original Act. *Twiss v. State, Dep't of Treasury,* 124 *N.J.* 461, 468, 591 *A.*2d 913 (1991).

Further, in 1979, the Legislature focused on the retroactivity of the Act. *N.J.S.A.* 58:10–23.11f(b)(3) was added by *L.* 1979, *c.* 346 § 4. This section allows the Fund to pay for the cleanup and removal of discharges which occurred prior to April 1, 1977, as long as such cleanups and removals are conducted by the DEP or a local unit with the DEP's approval. *N.J.S.A.* 58:10–23.11f(b)(3). Neither the public hearing, the sponsor's statement, nor the committee statement indicate that the purpose of the amendment was to extend the liability of the Fund under *N.J.S.A.* 58:10–23.11g(a) to cover damages caused by pre-Act discharges. *Assembly Agriculture and Environment Committee Statement, A–3542* (Dec. 17, 1979); *Sponsor's Statement, A–3542* (1979). To the contrary, the amendments were only intended to permit the DEP, not private parties such as Park Ridge, to use the Fund to cleanup pre-Act discharges under *N.J.S.A.* 58:10–23.11f(b). *Assembly Agriculture and Environment Committee Statement, A–3542* (Dec. 17, 1979).

In 1980, the Legislature again revisited the retroactivity issue. A–2040 was proposed to "permit property owners whose drinking water supply had been contaminated by a discharge of a hazardous substance to make a claim against the Spill Compensation Fund for restoration or replacement of that water supply source, notwithstanding that the discharge may have occurred prior to the effective date of the [Act]." *Senate Energy and Environment Committee Statement, A–2040* (Nov. 24, 1980). *Accord Sponsor's*

*Statement, A–2040* (1980). This amendment was proposed "[a]s a result of a recent judicial opinion," presumably the trial court's decision in *Ventron,* holding that the Act is "prospective, rather than retroactive." *Senate Energy and Environment Committee Statement, A–2040,* (Nov. 24, 1980). Prior to enactment, A–2040 was amended at the Governor's request to provide for the Fund's retroactive liability for private well contamination only, excluding public wells from making claims against the Fund. *N.J.S.A.* 58:10–23.11f(e); *Governor's Statement, A–2040* (Jan. 2, 1981).

The legislative history behind A–2040 (1980) is particularly applicable since this claim involves a public well. The Legislature apparently understood that without this amendment to the Act well owners could not recover from the Fund for pre-Act discharges, but the Legislature intentionally deleted public wells from coverage under *N.J.S.A.* 58:10–23.11f(e). Clearly, the Legislature intended that the Fund would not compensate any pre-Act public well contamination.

Despite the Legislature's recognition of the retroactivity issues in the Act, the Legislature has not amended *N.J.S.A.* 58:10–23.11g(a) to address the holdings in *Atlantic City Municipal Utilities Authority v. Hunt, supra,* and *Township of South Orange Village v. Hunt, supra,* which were decided in 1986. The acquiescence by the Legislature implied that the holdings in these cases accurately reflect the Legislature's intent that this section of the statute not be applied retroactively. *Lemke v. Bailey,* 41 *N.J.* 295, 301, 196 *A.*2d 523 (1963). This conclusion is also supported by a statement made by Assemblyman Lesniak, the Sponsor of the 1979 amendments to the Act, that "[t]he [Spill] Act is essentially prospective in its application." Raymond J. Lesniak, *The Statutory Treatment of Wastes: A Legislator's Perspective,* 7 Seton Hall Legis. *J.* 35, 38 (1983).

In sum, the only compensation provided by the Fund for pre-Act discharges is for DEP conducted or approved cleanups under *N.J.S.A.* 58:10–23.11f(b)(3) and for private well owners under

*N.J.S.A.* 58:10–23.11f(e). *N.J.S.A.* 58:10–23.11g(a) does not make the Fund liable for other pre-Act discharges.

■ Since *N.J.S.A.* 58:10–23.11g(a) is not retroactive, Park Ridge was required to prove that it had suffered damages as a result of a post-Act discharge. Park Ridge failed to do this. Consequently, Judge McGill's determination that Park Ridge had failed to prove a post-Act discharge clearly was supported by sufficient credible evidence in the record, and he, therefore, properly held that Park Ridge's claim with respect to well nineteen was not valid and dismissed the claim.

Accordingly, the Arbitration Decision dismissing the Park Ridge claim with respect to well nineteen is affirmed substantially for the reasons expressed by Judge McGill in his written decision of September 16, 1996.