765 A.2d 205

HUDSON NEUROLOGICAL CLINIC, INC., FIRST MEDICAL SUP-
PLY, INC., WEST NEW YORK CHIROPRACTIC, INC., NORTH
HUDSON CHIROPRACTIC, INC., FLORIDA MEDICAL SUPPLY
INC., AND THE HEALING CLINIC, INC., PLAINTIFFS–RE-
SPONDENTS, v. PNC BANK, N.A., NEW JERSEY, SUCCESSOR–
IN–INTEREST TO MIDLANTIC NATIONAL BANK, DEFEN-
DANTS–APPELLANTS, AND W & T, INC. TRADING AS FIRST
BILLING SERVICE, THOMAS LAMAS AND EMILIO ROBAINA,
DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued October 24, 2000—Decided November 20, 2000.

Before Judges KESTIN, CIANCIA and ALLEY.

*Gregg S. Sodini* argued the cause for appellant (*Buchanan Ingersoll*, attorneys; *Mr. Sodini*, of counsel and, with *Mary Fran Farley*, on the brief).

*Edward J. Bowen* argued the cause for respondents.

The opinion of the court was delivered by

ALLEY, J.A.D.

Defendant PNC Bank appeals from the motion court's grant of judgment against it, which also brings before us the motion court's earlier grant of plaintiffs' motion for partial summary judgment and the court's denial of PNC's cross-motion for summary judgment, as well as the motion court's award against PNC of prejudgment interest.

This action arises from a fraudulent scheme that occurred in connection with plaintiffs' billing and collection activities for medical services and supplies. Plaintiffs would send bills to insurers for payment. Plaintiffs contend that they hired two individuals, Lamas and Robaina, to assist in the billing activities, and that instead those individuals perpetrated a fraud by convincing the insurers to send checks that the insurers issued in payment of plaintiffs' services to a fraudulent operation controlled by Lamas and Robaina instead of to plaintiffs. All these checks were made payable to plaintiffs, but after obtaining possession of the checks Lamas and Robaina allegedly caused them to be improperly endorsed and then deposited in accounts with PNC that Lamas and Robaina controlled. The parties stipulated that the total face amount of the checks was $216,289.71. It was undisputed that the insurers never actually delivered the checks to plaintiffs. There

was no evidence before the motion court that plaintiffs actually authorized Lamas or Robaina to receive delivery of the checks payable to plaintiffs that they converted.

This appeal poses two main issues: (1) whether plaintiffs, to have standing to sue PNC for conversion of the checks under *N.J.S.A.* 12A:3–419 as in effect at the time of the alleged fraud, must have received delivery of the checks, actually or constructively, and (2) whether they received such delivery of the checks. The motion judge did not specifically decide the first issue but ruled in any event that plaintiffs had received constructive though not actual delivery. He found that while the only evidence as to intent was that the insurers presumably intended that the checks would be delivered to plaintiffs when they placed them in the mail, plaintiffs, through that mailing to the defrauding parties, nevertheless had acquired a "sufficiently vested ownership right" in the checks to have standing to sue.

Plaintiffs' amended complaint alleges that the checks were deposited in the PNC accounts by or on behalf of Lamas and Robaina from about March 1, 1993 until December 1994. As we have noted, the applicable Uniform Commercial Code provision that was in effect in New Jersey regarding the conversion of checks was *N.J.S.A.* 12A:3–419. That section does not specify that delivery is a prerequisite to standing to sue thereunder for conversion. It was replaced, effective June 1, 1995, by *N.J.S.A.* 12A:3–420 of the revised Article 3, which in contrast provides in paragraph (a), "[a]n action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee."

We do not apply this new provision because it had not been adopted at the time of the events complained of by plaintiffs and is inapplicable. *Interchange State Bank v. Veglia,* 286 *N.J.Super.* 164, 668 *A.*2d 465 (App.Div.1995) *certif. denied,* 144 *N.J.* 377, 676 *A.*2d 1092 (1996). It is instructive, however, to note that Comment 1 of the Uniform Commercial Code Comments to *N.J.S.A.*

12A:3–420, effective June 1, 1995, states, "There was ... a split of authority under former Article 3 on the issue of whether a payee who never received the instrument is a proper plaintiff in a conversion action."

New Jersey, under the version of the Uniform Commercial Code set forth in the old *N.J.S.A.* 12A:3–419, was one jurisdiction that required delivery of a check to the payee as a prerequisite to the payee's standing to sue for the check's conversion, although the requirement was only one of constructive delivery, not actual delivery.

This court applied the concept of constructive delivery in *Interchange State Bank, supra*, which affirmed the trial court's finding that constructive delivery occurred when the drawer transferred the check to an authorized agent of the payee. Moreover, in *Humberto Decorators, Inc. v. Plaza National Bank*, 180 *N.J.Super.* 170, 434 *A.*2d 618 (App.Div.1981), the check was constructively delivered to the payee through the debtor, thereby vesting ownership rights in the check in the payee, and the payee therefore had standing to sue. *Id.* at 175, 434 *A.*2d 618.

█ We are satisfied that constructive delivery is a prerequisite to a payee's standing to sue under the former *N.J.S.A.* 12A:3–419 if actual delivery has not occurred.

PNC contends that the motion court's finding of constructive delivery was in error, because the insurers' depositing of the checks into the mail did not prove their intent to pay plaintiffs, and because plaintiffs did not adopt the postal authorities as their agents.

█ We agree that it was error, on the basis of the present record, to grant judgment against PNC in favor of plaintiffs for conversion under the former *N.J.S.A.* 12A:3–419, but our decision is not entirely based on the reasons advanced by PNC. As we have shown, standing exists in favor of a payee to whom the payor has made constructive delivery, if not actual delivery. It is undisputed that the checks were not actually received by plaintiffs,

at least in the sense of being received by employees acting in the scope of their duties, because plaintiffs themselves assert that Lamas and Robaina had no authority to do what they did. The difficulty with the ruling appealed from is that the proofs on the motion were insufficient to establish that the insurer sent the checks to persons they in fact and reasonably understood were plaintiffs' apparent if not actual agents.

We take it that plaintiffs adhere to the position that the wrongdoers were not their actual agents for receipt or collection of the checks. We note in this connection some matters in the record. In response to Requests for Admissions that PNC served, plaintiffs admitted among other things that "[n]one of the checks were ever delivered to plaintiffs" and that "Lamas and Robaina were not agents of any of the plaintiffs nor authorized by any of the plaintiffs to receive any of the checks on behalf of any of the plaintiffs." Moreover, the moving certification of Orlando Cordoves, plaintiffs' principal, filed in support of their partial summary judgment motion, stated that W & T, Inc., an entity through which Lamas and Robaina allegedly perpetrated the fraud, was engaged by plaintiffs "to prepare bills which were forwarded to patient's [sic] insurers for payment" and that "W & T, Inc. had no responsibility or authority to collect instruments payable to" plaintiffs.

Thus, plaintiffs themselves have taken the position under oath that they did not actually authorize the wrongdoers to collect the checks from the insurers, and they have not asserted the contrary, namely, that those to whom the checks were mailed by the insurers were their actual agents for receipt of the checks and for purposes of conferring standing on plaintiffs to sue under the former *N.J.S.A.* 12A:3–419. Inasmuch as the plaintiffs' statements regarding the wrongdoers' lack of actual authority did not occur in the context of a prior litigation that has been successfully terminated in their favor, we note in accord with Judge Skillman's recent opinion in *Kimball International, Inc. v. Northfield Metal Products*, 334 *N.J.Super.* 596, 760 *A.*2d 794 (App.Div.2000), that

the issue is not one of judicial estoppel. Rather, we rely simply on the lack in the present record of even a scintilla of proof that the wrongdoers were plaintiffs' actual agents. Plaintiffs' admissions to the contrary are too deliberate and have been too firmly adhered to in this litigation to permit plaintiffs to recover on the basis of an inconsistent theory that, at least at this juncture, is wholly lacking in evidential support. We do not decide whether as a matter of law that plaintiffs can or cannot contradict those admissions, only that they have not attempted to do so.

In any event, even if such proof of actual authority is missing, that does not mean that plaintiffs' repudiation of actual authority on the part of the wrongdoers to act as their agents for receipt of the checks precludes them from asserting standing under the statute if credible evidence should exist that the insurers sent the checks because they reasonably and actually understood that the recipients had apparent authority to receive them for plaintiffs or, perhaps, that they were not independent agents of plaintiffs but their officers or employees.

We conclude on the basis of the present record that there was no showing of actual delivery of the checks to plaintiffs by way of delivery to their authorized agents, and consequently plaintiffs have not established standing to sue for conversion of the checks on that basis. We are unable to determine from this record, however, whether plaintiffs would be able to establish that constructive delivery to apparent agents was made by the insurers.

Thus, the motion court erred in granting plaintiffs judgment against PNC on the present record. In light of that disposition, we likewise vacate the motion court's award of prejudgment interest to plaintiffs.

Accordingly, the judgment appealed from is reversed, and this matter is remanded to the Law Division.