770 A.2d 1264 (2001)
339 N.J. Super. 105
SARASOTA-COOLIDGE EQUITIES II, L.L.C., assignee of Federal Deposit Insurance Corporation, receiver for Suburban National Bank, Plaintiff-Appellant,
v.
S. ROTONDI AND SONS, INC., Defendant-Respondent, and
Angelo J. Rotondi, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 2000.
Decided April 12, 2001.
*1265 John A. Craner, Scotch Plains, argued the cause for appellant, (Craner, Nelson, Satkin & Scheer, attorneys; Mr. Craner, on the brief).
Nabil N. Kassem, Roseland, argued the cause for respondent, (Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, attorneys; Carl R. Woodward, III, Brian H. Fenlon and Mr. Kassem, on the brief).
Before Judges STERN, RODRIGUEZ and FALL.
The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiff appeals from an order entered on August 20, 1999, granting summary judgment in favor of defendant S. Rotondi and Sons, Inc. (defendant) and dismissing the complaint.
The issues on this appeal relate to the applicable statute of limitations with respect to the timeliness of plaintiff's complaint seeking judgment on defendant's $140,000 demand note executed in favor of Suburban National Bank on March 11, 1991, and whether the assignor Federal Deposit Insurance Corporation's letter of July 28, 1991 to defendant (and deceased co-defendant guarantor Angelo Rotondi (Rotondi)) constituted a "demand" for payment.
Defendant claims that the suit was barred by the applicable six-year statute of limitations under N.J.S.A. 2A:14-1 and 12 U.S.C.A. § 1821. Plaintiff asserts that it is a holder in due course and that the 1995 amendment to the Uniform Commercial Code (UCC), N.J.S.A. 12A:3-118(b), governs the timeliness of its action. Defendant contends that since N.J.S.A. 12A:3-118(b) was not enacted until 1995 it should not be given retroactive effect.
The motion judge held that the six-year statute of limitations embodied in N.J.S.A. 2A:14-1 "applie[d]" and ran from the date the note was executed; that 12 U.S.C.A. § 1821 (which incorporated that New Jersey statute of limitations) applied "because the FDIC took over the bank's assets [on July 26, 1991,] subsequent to the making of the note"; and that the action was time barred. The judge further concluded that the 1995 revision to N.J.S.A. 12A:3-118(b) was not to be given "retroactive" effect, but that even if it were, a July 28, 1991 letter from the FDIC to defendant "constituted a demand" for payment and, therefore, the six-year bar of N.J.S.A. 12A:3-118(b) had run.
Before us, plaintiff argues that the Legislature had the authority "to extend the statute of limitations on a demand promissory note"; that N.J.S.A. 12A:3-118 "was part of a curative revision" of the UCC and that the Legislature intended to give it "retroactive effect"; that the July 28, 1991 letter "was not a demand for payment"; and that as a "holder in due course," it is "entitled to payment from defendant corporation as a matter of law."[1]
We conclude that the 1995 revision of the UCC and the provisions of N.J.S.A. *1266 12A:3-118 do not apply in this case. As that amendment does not apply to demand promissory notes already in existence on its effective date, we affirm the judgment.

I.
On March 11, 1991, Rotondi executed and delivered on defendant's behalf a "PROMISSORY NOTE (Demand)," payable to Suburban National Bank ("Suburban") in the principal sum of $140,000. While the note provided for monthly payments of interest only, beginning on April 11, 1991, it specifically stated "[t]his [o]bligation... is payable on demand." The parties agree that this constituted a "demand note."[2]
On July 26, 1991, Suburban was declared insolvent. The FDIC was appointed its receiver and, as a result, holder of defendant's note and Rotondi's guaranty. On July 28, 1991, FDIC sent a letter to defendant and Rotondi so advising them. The letter stated:
On July 26, 1991, Suburban National Bank, Somerville, New Jersey, was declared insolvent and was closed by the Office of the Comptroller of the Currency. The Federal Deposit Insurance Corporation (FDIC) was appointed Receiver and is now the holder of your obligation(s) owed to the failed bank.
If your payments are current, adhere to the original contractual terms of your indebtedness by making payments as described below:
Pay to: FDIC as Receiver of Suburban National Bank
Care of: Provident Savings Bank
32 New Amwell Road
Somerville, New Jersey 08876
If your payments are past due, you should contact this office immediately to arrange for prompt payment of the amount due.
If your loan is secured by real estate, equipment or vehicles, advise your insurance agent to name the FDIC as "Loss Payee" and provide proof of insurance to this office.
Consult with the undersigned before selling or otherwise disposing of any property (including crops and livestock) pledged to secure your indebtedness.
Please follow the above correspondence instructions until further notice.

[Emphasis added.]
As of July 28, 1991, no payments had been made on the note.
On February 18, 1997, the FDIC assigned the note and guaranty to plaintiff "effective December 12, 1996." The assignment was made "without recourse and without representation or warranty." Apparently as a result of a communication with plaintiff, on January 30, 1997 defendant "made an interest payment of $2,000.00 toward the Note." In the letter sent with its check, defendant stated that this was a "good faith payment," and *1267 "made without prejudice to any rights, defenses or claims which S. Rotondi & Sons, Inc. may have."
It is uncontested that on May 7, 1997, plaintiff "made a demand for full payment upon defendant," and that on June 25, 1997, plaintiff "made a second demand upon the defendant for payment in full of the Note." Defendant "failed to pay the Note."
On August 7, 1997, plaintiff filed this complaint.[3] In its answer, defendant asserted that plaintiff's action was "barred by the Statute of Limitations."
In granting defendant's motion for summary judgment, the trial judge stated:
The Court has reviewed the moving and opposing papers, and the Court finds that the Statute of Limitations is an absolute bar to the prosecution of this action. [N.J.S.A. 2A:14-1] applies. The case law is clear that it runs from the making of the note.
... the Court finds that the Statute of Limitations runs from the execution of the note. As a result, the six-year statute [of limitations] under the Federal Statute [12 U.S.C.A. § 1821(d)(14)(A)] applies because the FDIC took over the bank's assets subsequent to the making of the note.
That statute, too, has expired and I'm satisfied that [the 1995 version of] N.J.S.A. 12A:3-118(b) alters the terms of the agreement between the defendant and the original holder of the note by extending the maximum exposure under the note from a period of six years to a period of ten years with no demand for interest or no payment having been made. That's certainly significant change in the exposure of the defendant on the note.
But even if it's error to hold that 12A:3-118(b) cannot be applied retroactively, the Court finds that the demand from the FDIC for payment, after the FDIC took over the loan, constituted a demand that started the running of the Statute of Limitations under Title 12A. And thus the action would be barred under that statute, as well.
The Court finds that the making of a $2,000 payment in good faith, without prejudice to the right to dispute the efficacy of the note or its legal effect ... [,] has no effect on the tolling of the Statute of Limitations and the ... cross-motion of Plaintiff for money due and owing on the note is denied.

II.
Plaintiff contends that because the "[L]egislature had the constitutional authority to extend the statute of limitations on a demand promissory note," the motion judge "erred in concluding that the passage of N.J.S.A. 12A:3-118(b) impermissibly altered the terms of the note by extending the statute of limitations from six to ten years in 1995, a time prior to the running of the six-year statute of limitations in effect prior to the enactment of N.J.S.A. 12A:3-118." The critical question before us is whether the enlarged statute of limitations governs with respect to a "demand" note executed before the 1995 revision of the UCC.
N.J.S.A. 2A:14-1 provides, in relevant part, that "[e]very action at law ... for *1268 recovery upon a contractual claim or liability, express or implied, ... shall be commenced within 6 years next after the cause of any such action shall have accrued." Thus, under that statute it had been established prior to adoption of the UCC that "[o]n a promissory note payable on demand, the statute of limitations begins to run in favor of the maker from the date of execution and delivery of the note." Rickenbach v. Noecker Shipbuilding Co., 66 N.J.Super. 580, 583, 169 A.2d 730 (Ch.Div. 1961). At the time that this note was executed, the UCC in effect in New Jersey, adopted in 1961, see L. 1961, c. 120, § 3-122, provided that the "cause of action against a maker or an acceptor accrues... (b) in the case of a demand instrument upon its date or, if no date is stated, on the date of issue." N.J.S.A. 12A:3-122(l). Hence, while the statute detailed when a cause of action "accrued," the UCC had no independent statute of limitations governing commencement of the action.[4]
In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). See, generally, Annot. "Special Commentary: Limitation of Actions under § 2(d)(14) of Federal Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) (12 U.S.C.A. § 1821(d)(14)) in Actions Brought by Federal Deposit Insurance Corporation as Receiver," 126 A.L.R. Fed. 1, § 2[a] at 12 (1995). In material part, the statute provides:
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation [FDIC] as conservator or receiver shall be-(i) in the case of any contract claim, the longer of-(I) the 6 year period beginning on the date the claim accrues; or (II) the period applicable under State law[.]

[12 U.S.C.A. § 1821(d)(14)(A).]
The statute provides further that:
For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.

[12 U.S.C.A. § 1821(d)(14)(B).]
Because most courts "have held that assignees [of FDIC] obtain the benefit of the longer federal statute of limitations," 126 A.L.R. Fed., supra, at 39-40, plaintiff has been treated as the FDIC. See, e.g., F.D.I.C. v. Bledsoe, 989 F.2d 805, 810-11 (5th Cir.1993); Remington Investments, Inc. v. Kadenacy, 930 F.Supp. 446, 450-51 (C.D.Cal.1996); Mountain States Financial Resources Corp. v. Agrawal, 777 F.Supp. 1550, 1552 (W.D.Okla.1991). That principle is not at issue here. The interesting legal issue before us relates to "the applicable" State law for purposes of 12 U.S.C.A. § 1821(d)(14). Stated differently, the question is whether the six-year statute of limitations embodied in N.J.S.A. 2A:14-1 was enlarged by the 1995 revision of the UCC.
As already noted, prior to June 1, 1995, N.J.S.A. 12A:3-122 provided that "a *1269 cause of action against a maker or an acceptor accrues ... in the case of a demand instrument upon its date or, if no date is stated, on the date of issue." That statute was repealed effective June 1, 1995, see L. 1995, c. 28, § 1, and replaced in material part by N.J.S.A. 12A:3-118 which provides:
b. Except as provided in subsection d. or e. of this section, if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of 10 years.

....
d. An action to enforce the obligation of the acceptor of a certified check or the issuer of a teller's check, cashier's check, or traveler's check must be commenced within three years after demand for payment is made to the acceptor or issuer, as the case may be.
e. An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within six years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.

[Emphasis added.]
If the 1995 version of N.J.S.A. 12A:3-118(b) is applicable here, plaintiff's action might not be time-barred. As noted, under 12 U.S.C.A. § 1821(d)(14)(A), "the applicable statute of limitations" in the case of any contract claim is "the longer" of "the 6-year period beginning on the date the claim accrues,"[5]or "the period applicable under State law." Thus, if the 1995 version of N.J.S.A. 12A:3-118(b) is applicable, plaintiff's cause of action would not be barred unless the 1991 letter from the FDIC constituted a "demand" and the complaint was filed more than six years "after the demand." See N.J.S.A. 12A:3-118(b).
As previously noted, the trial judge held "that 12A:3-118[(b)] cannot be applied retroactively" because she was:
satisfied that N.J.S.A. 12A:3-118[ (b) ] alters the terms of the agreement between the defendant and the original holder of the note by extending the maximum exposure under the note from a period of six years to a period of ten years with no demand for interest or no payment having been made. That's certainly significant change in the exposure of the defendant on the note.
In State v. Standard Oil Co., 5 N.J. 281, 293, 74 A.2d 565 (1950), aff'd sub nom Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951), our Supreme Court made clear "that where a right of action has become barred under existing law, the statutory defense constitutes a vested right which is proof against legislative impairment." See also State v. United States Steel Corp., 22 N.J. 341, 346, 126 A.2d 168 (1956) ("under New Jersey law the expiration of a time limitation upon a right of action not only bars the remedy but bestows upon the debtor a vested property right immune from legislative impairment"). *1270 Accord State v. Short, 131 N.J. 47, 54, 618 A.2d 316 (1993).
However, with respect to an "ordinary statute of limitations, dealing only with the remedy given to the plaintiff[ ]," it is well settled that, "until the period fixed by such a statute has arrived, the statute is a mere regulation of the limitation, and, like other such regulations, subject to legislative control." Bretthauer v. Jacobson, 79 N.J.L. 223, 225, 75 A. 560 (Sup.Ct.1910). Thus, the statute of limitations may be extended "prior to the falling of the bar created by the statute." Vincent, Inc. v. Lambek, 9 N.J.Super. 522, 527, 75 A.2d 748 (Ch.Div.1950). See, generally, 51 Am. Jur.2d Limitation of Actions § 49 at 482-83 (2000) which states:
A legislature validly may enlarge the period of limitation of a procedural statute of limitations and make it applicable to existing causes of action, provided that this does not revive a cause of action that already has become barred. There is no vested right in the running of a statute of limitations if it has not completely run and barred the action. However, once an action has become barred, in some jurisdictions a defendant may have a vested interest in the running of the statute of limitations and a statute that would impair such an interest is unconstitutional.
Here, under N.J.S.A. 2A:14-1 and N.J.S.A. 12A:3-122(1)(b), defendant's right to rely upon the statute of limitations defense did not become a vested right until March 12, 1997, that is, six years after the note's execution and delivery to Suburban on March 11, 1991. However, before March 12, 1997, the Legislature effective June 1, 1995 changed the applicable statute of limitations for a "note payable upon demand" by its adoption of N.J.S.A. 12A:3-118(b).
New Jersey courts have "long followed a general rule of statutory construction that favors prospective application of statutes." Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981). See also Skulski v. Nolan, 68 N.J. 179, 202, 343 A.2d 721 (1975) ("Our decisions reflect the general principle that[,] in construing legislation, statutes should not be given retrospective application unless such an intention is manifested by the Legislature in clear terms"); Kopczynski v. County of Camden, 2 N.J. 419, 424, 66 A.2d 882 (1949) ("A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the [L]egislature cannot otherwise be satisfied"); Woodbury Heights Bd. of Education v. Starr, 319 N.J.Super. 528, 543, 725 A.2d 1180 (App.Div.1999) ("A conclusion that the legislature intended retroactive application requires a compelling showing of such intention").
This rule of statutory construction is subject to several exceptions. Gibbons, supra, 86 N.J. at 522-23, 432 A.2d 80. For example, as plaintiff argues, a statute may be given retroactive application if it is "curative." Id. at 523, 432 A.2d 80. Under the "curative exception," an amendment to a statute may be given retroactive effect, "if it is designed merely to carry out or explain the intent of the original statute." Kendall v. Snedeker, 219 N.J.Super. 283, 287, 530 A.2d 334 (App.Div.1987). As Judge (now Justice) Long has explained, "[i]n essence, an amendment [to a statute] which falls within the curative exception can be retroactively applied consistent with the general *1271 rule of prospective application because its purpose is to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act." Id. at 288, 530 A.2d 334. A "curative amendment" to a statute would be one that "brought the law into harmony with what the Legislature originally intended," in that such an amendment is "meant only to clarify what was originally intended." Ibid.Accord Schiavo v. John F. Kennedy Hospital, 258 N.J.Super. 380, 386, 609 A.2d 781 (App. Div.1992), aff'd o.b., 131 N.J. 400, 620 A.2d 1050 (1993) (increase in charitable immunity limitation prospective only); see also Matter of D.C., 146 N.J. 31, 51, 679 A.2d 634 (1996); Carnegie Bank v. Shalleck, 256 N.J.Super. 23, 40, 606 A.2d 389 (App.Div. 1992).
Plaintiff notes that L. 1995, c. 28, repealed and replaced "Chapters 3[and] 4 of the Uniform Commercial Code" as part of a "total overhaul and revision of the UCC." Plaintiff also notes that, "[p]rior to the 1995 amendments, there was no provision in the UCC for a statute of limitations under Chapter 3." Finally, plaintiff notes that N.J.S.A. 12A:3-122, which dealt with the accrual of causes of action on various forms of instruments including demand notes, "was repealed in 1995 and replaced by N.J.S.A. 12A:3-118." As plaintiff states it, the new statute, for the first time in the UCC with regard to demand notes, "set forth the applicable periods within which to sue ..., making the period of limitation to sue on a [demand] promissory note ten years from the date of issue or the date of the note [if neither principal nor interest on the note has been paid for a continuous period of ten years], if no demand for payment was made, and six years from the date of a demand, if a demand for payment was in fact made."
Even under plaintiff's phraseology, the 1995 revision cannot be deemed merely curative. Rather, it constituted a significant change in the statute of limitations for demand notes. As stated in New Jersey Study Comment No. 1 to the pre-1995 N.J.S.A. 12A:3-122, "[i]n the case of a demand instrument, the statute of limitations starts to run in favor of the primary parties at the moment of issue, for it is clear that no demand for payment is needed to charge the maker on a demand note, or the acceptor of a demand draft or check." See also Ligran, Inc. v. Medlawtel, Inc., 86 N.J. 583, 588, 432 A.2d 502 (1981) ("we affirm the principle that[,] where a maker also signs a demand note as a guarantor of payment, the statute of limitations begins to run from the date of issue, not from the date of demand for payment following dishonor"). As a result of the 1995 revision, the statute of limitations runs from the demand and has been elongated to ten years from the last payment of principal or interest if no demand is made. The revision is substantive and not merely "curative." Cf. Hudson Neurological Clinic, Inc. v. PNC Bank, 336 N.J.Super. 373, 375-76, 765 A.2d 205 (App. Div.2000) (declining to apply another provision of the 1995 UCC revision to a claim against a bank for conversion); Leeds v. Chase Manhattan Bank, 331 N.J.Super. 416, 421 n. 6, 752 A.2d 332 (App.Div.2000) (noting that L. 1995, c. 28, constituted an "overall revision of Article 3 of the UCC").
We conclude that N.J.S.A. 12A:3-118 has prospective application only. While enacted on February 15, 1995, the 1995 revision of the UCC, L. 1995, c. 28, did not take effect until June 1, 1995, see L. 1995, c. 28, § 15 ("[t]his act shall take effect on the first day of the first calendar month which follows the 90th day after enactment"), and an indicia of legislative intent that an "entire statute should apply prospectively" is a "postponed effective date." *1272 Twiss v. State, Dept. of Treasury, 124 N.J. 461, 468, 591 A.2d 913 (1991). See Norman J. Singer, 2 Sutherland on Statutes and Statutory Construction § 41.04 at 410 (5th ed. 2001) ("Postponement of an effective date for an act indicates that it should have only prospective application"). See also Handy & Harman v. Park Ridge, 302 N.J.Super. 558, 565-66, 695 A.2d 747 (App. Div.), certif. denied, 152 N.J. 10, 702 A.2d 349 (1997) ("the fact that the effective date of the [Spill] Act was postponed for more than three months weighs in favor of prospective application of the entire original Act"); Thomas v. Romeis, 234 N.J.Super. 364, 374, 560 A.2d 1267 (App.Div.1989) ("[m]aking the statute effective on a date certain ..., rather than on the date it was signed into law, is an indication that only prospective effect was intended").
In Interchange State Bank v. Veglia, 286 N.J.Super. 164, 668 A.2d 465 (App.Div. 1995), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996), we noted that L. 1995, c. 28, "[e]ssentially ... repealed and replaced N.J.S.A. 12A:3-101 through 3-805." 286 N.J.Super. at 184, 668 A.2d 465. Referring to N.J.S.A. 12A:3-420 (which in 1995 replaced the repealed N.J.S.A. 12A:3-419), "[w]e decline[d] to apply the statute retroactively inasmuch as there is no indication that the Legislature intended that effect." Id. at 185, 668 A.2d 465.[6] Similarly, in Hudson Neurological Clinic, we recently concluded that the 1995 revision to the UCC could not save the grant of summary judgment to plaintiffs. Speaking through Judge Alley, we declined to apply N.J.S.A. 12A:3-420, which replaced N.J.S.A. 12A:3-419, effective June 1, 1995, "because it had not been adopted at the time of the events complained of by plaintiffs and is inapplicable." Hudson Neurological Clinic, supra, 336 N.J.Super. at 375, 765 A.2d 205, citing Interchange State Bank; see also Ingram v. Earthman, 993 S.W.2d 611 (Tenn.Ct. App.1998), cert. denied, 528 U.S. 986, 120 S.Ct. 445, 145 L.Ed.2d 362 (1999); Johnson v. Johnson, 244 Ill.App.3d 518, 185 Ill.Dec. 214, 614 N.E.2d 348 (1993). It has, therefore, become part of our consistent State court jurisprudence that the 1995 revision of the UCC should be considered a wholesale revision of the Code to apply prospectively to transactions occurring after its effective date, irrespective of whether a particular revised provision is beneficial or detrimental to plaintiff's cause of action.
Our disposition makes it unnecessary to decide whether the FDIC letter of July 28, 1991 constituted a "demand," as a matter of law, which would commence the six-year statute of limitations under the 1995 revision to N.J.S.A. 12A:3-118(b). To the contrary, we decline to decide what constitutes a "demand" under N.J.S.A. 12A:3-118. Suffice it to say that our interpretation of the statute's prospectivity is supported by the belief that what may constitute a "demand" in 1991 should not turn on the interpretation of a statute adopted four years later. Commercial transactions require more stability.[7]
The judgment dismissing the complaint is affirmed.
NOTES
[1] Plaintiff had filed a cross-motion for summary judgment, and although no order was entered denying it, plaintiff seems to press its position on this appeal. While defendant contends we cannot consider that issue in the absence of a cross-appeal, our disposition renders the question academic.
[2] On March 11, 1991, Rotondi also executed and delivered a "Guaranty" to Suburban. Under this document, Suburban could demand payment from Rotondi of "every kind of debt" owed by defendant to Suburban if defendant failed to pay Suburban what it owed, "no matter what may happen." After failing to answer the complaint in this case, Rotondi filed a "petition under Chapter 11 of the Bankruptcy Act" and the complaint was dismissed against him. He subsequently died.
[3] The briefs before us agree as to the filing date even though it is not so indicated on the copy in the appendix. The complaint was dated July 30, 1997.
[4] For an interesting discussion regarding the difference between statute of limitations which deal with the undefined term "accrual" and those which run from fixed dates or events, see, e.g., LaFage v. Jani, 166 N.J. 412, 766 A.2d 1066 (2001); Caravaggio v. D'Agostini, 166 N.J. 237, 765 A.2d 182 (2001).
[5] The complaint was filed more than six years after the FDIC was appointed receiver.
[6] Neither party cites Motley v. Motley, 60 F.Supp.2d 380 (D.N.J.1999), which did not cite Interchange Bank.
[7] While plaintiff has argued that it is "a holder in due course and is entitled to payment from defendant corporation as a matter of law," it does not argue that, if it is wrong with respect to the applicable statute of limitations, the statutory defense is not applicable. See N.J.S.A. 12A:3-305 (pre-1995 and as amended).