814 A.2d 1153 (2003)
357 N.J. Super. 253
Thomas D. WILLIAMSON, Plaintiff-Respondent,
v.
TREASURER, State of New Jersey, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 2002.
Decided February 4, 2003.
*1155 David Samson, Attorney General, attorney for appellant (Michael J. Hass, Assistant Attorney General, of counsel; Patrick DeAlmeida, on the brief).
Respondent, Thomas D. Williamson, submitted a brief pro se.
Before Judges PETRELLA, BRAITHWAITE and LINTNER.
*1154 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Defendant, the Treasurer of the State of New Jersey (State Treasurer), appeals from the motion judge's grant of summary judgment in favor of plaintiff, Thomas Williamson. The central issue on appeal is whether the judge correctly ruled that public disclosure of financial information as to the proceeds of abandoned or unclaimed life insurance policies and annuity contracts is required under the Right to Know Law and New Jersey's Unclaimed Property Act.
Plaintiff Williamson is a lawyer who operates a business that for a fee researches and locates the missing owners of unclaimed assets held by the State. The Office of the Administrator (see N.J.S.A. 46:30B-6a) of Unclaimed Property (OAUP) in the Department of the Treasury is charged with the responsibility of maintaining records of abandoned property. N.J.S.A. 46:30B-1, et seq. These parties were previously involved in litigation arising out of the OAUP's refusal to confirm the existence or nonexistence of property held for the benefit of missing owners.[1]
The present appeal by the State Treasurer involves another discrete category of unclaimed funds, those held or owing under life insurance policies and annuity contracts. The funds owing under such policies and contracts that matured or terminated were deemed by the State as presumed abandoned if unclaimed for more than five years after the funds became *1156 due and payable. N.J.S.A. 46:30B-22.[2] Such policies mature at the time of death of the insured or at the time that the insured has attained the limiting age under the mortality table on which the policy is based. N.J.S.A. 46:30B-24b.
The State Treasurer has taken possession of funds representing benefits under numerous life insurance policies and annuity contracts that have gone unclaimed for the statutory period. Those funds are held by the State until a lawful claimant applies on prescribed forms for turnover of those funds. Prior to the deposit of those funds into the Unclaimed Personal Property Trust Fund, the State Treasurer, pursuant to the then version of N.J.S.A. 46:30B-76, which had been extant since at least 1989,[3] was specifically directed to record the name and last known address of each insured person, annuitant, and beneficiary, the policy number, issuing company, and amount due on each policy or contract. Presumably, such information would need to be recorded even in the absence of this statutory mandate for audit purposes as well as tracking of the various funds held. As noted in Williamson v. Treasurer of the State of New Jersey, 350 N.J.Super. 236, 238, n. 3, 794 A.2d 873 (App.Div.2002), the names and addresses of persons with unclaimed funds being held by the State can be accessed on the Internet[4] at http://www. state.nj.us/treasury/Trenton/unclaimsrch. ttn. The problem is, misspellings or changes in address are not so reflected. Where the amounts are significant, persons such as plaintiff have an incentive to research and try to locate the persons or heirs who have a rightful claim to the funds, thus increasing the prospects of finding the rightful owners or claimants.
On July 25, 2001, Williamson provided an OAUP employee with the names and addresses of persons who may be the owners or beneficiaries of unclaimed life insurance policies or annuity contracts and submitted a request that he be informed of the amounts due on certain insurance and annuity contracts. This request was denied. On July 27, 2001, Williamson filed an action in lieu of prerogative writs under the Right to Know Law seeking an order providing him with a specification of the amount due under the requested unclaimed life insurance policies and annuity contracts in the custody of the State Treasurer.
Williamson moved for summary judgment on August 10, 2001, and the State cross-moved to dismiss the complaint. In a November 13, 2001 written opinion, Judge Feinberg determined that the information *1157 requested by Williamson was not confidential and was subject to disclosure under the Right to Know Law. Judgment was entered on November 26, 2002, to that effect and Williamson was awarded $500 in attorney's fees and $190 in costs. On December 10, 2001, an amended order decreed that the State Treasurer did not have to calculate and disclose to Williamson the current interest due on any insurance policy or annuity contract in his custody. In addition, the amount that the State Treasurer was ordered to pay to Williamson was reduced to $190, reflecting a denial of attorney's fees, but indicating no reason for that change.
On January 14, 2002, Judge Feinberg denied the State Treasurer's request for a stay of the judgment. The State Treasurer filed an appeal on January 15, 2002, and a stay pending appeal was granted.

I.
The issue presented to us is whether the judge properly determined that the information Williamson requested from the OAUP is subject to public disclosure under the Right to Know Law.
Judge Feinberg applied the statutes in the form that existed at the time the matter was before her and held that New Jersey's version of the Uniform Unclaimed Property Act,[5]N.J.S.A. 46:30B-1, et seq., and the Right to Know Law, N.J.S.A. 47:1A-1, et seq., required the OAUP to record the amounts due on unclaimed insurance and annuity contracts and to make this information available for public inspection pursuant to the time and place restrictions in N.J.S.A. 47:1A-2. We agree with her decision granting summary judgment. See Brill v. Guardian Life Insur. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), and Pinkowski v. Township of Montclair, 299 N.J.Super. 557, 565, 691 A.2d 837 (App.Div.1997). We are also of the view that any amendments to New Jersey's Unclaimed Property Act subsequent thereto are not retroactive as discussed hereinafter.
Relying on the then version of N.J.S.A. 46:30B-52, the State Treasurer contended that the disclosure of information should be limited to names and addresses and that N.J.S.A. 46:30B-76 and N.J.S.A. 30B-76.1 "protect" from disclosure, presumably as "confidential" as to individuals who do not even know the State holds their funds, the amounts due on unclaimed insurance and annuity contracts. In all likelihood a majority of those individuals in fact are either deceased or of extremely advanced age because life insurance and annuity proceeds are involved. It is hard to imagine that the Legislature intended to protect the confidentiality of amounts of funds belonging to deceased individuals who cannot make applications for refunds on their own behalf.
We reject the State Treasurer's argument that the information sought by Williamson is or should be considered confidential under N.J.S.A. 46:30B-76.1. The OAUP maintains records of unclaimed property and insurance and annuity contract funds as required by N.J.S.A. 46:30B-76, which at relevant times required that:
[t]he administrator shall record the name and last known address of each person appearing from the holder's reports *1158 to be entitled to the property and the name and last known address of each person or annuitant and beneficiary and with respect to each policy or contract listed in the report of an insurance company, its number, the name of the company, and the amount due. However, the administrator shall not include in this record any information deemed confidential under R.S. 46:30B-76.1. The record shall be available for the public inspection at all reasonable business hours. (emphasis added).
Interestingly, although the historical note to the statute recites that it is "similar to" section 23 of the Uniform Unclaimed Property Act (1981), after the amendment it is markedly different because the uniform act (and a subsequent 1995 version) does not treat amounts as confidential.[6] Indeed, the contrary appears when the Uniform Property Act (1981) provides:
§ 23. [Deposit of Funds].
[(a)] Except as otherwise provided by this section, the administrator shall promptly deposit in the [general fund] of this State all funds received under this Act, including the proceeds from the sale of abandoned property under Section 22. The administrator shall retain in a separate trust fund an amount not less than $[100,000] from which prompt payment of claims duly allowed must be made by him. Before making the deposit, the administrator shall record the name and last known address of each person appearing from the holders' reports to be entitled to the property and the name and last known address of each insured person or annuitant and beneficiary and with respect to each policy or contract listed in the report of an insurance company its number, the name of the company, and the amount due. The record must be available for public inspection at all reasonable business hours. (emphasis added).
We conclude that even absent such specification of information the OAUP would be required to maintain such information, including the amounts due. The next issue is whether the amount is confidential or can be made so by some fiat merely saying it is so. The dissemination of information "deemed confidential" is addressed by N.J.S.A. 46:30B-76.1,[7] which provides:

*1159 Any record or information that is deemed confidential under any New Jersey Law or federal law when in possession of a person shall continue to be confidential when revealed or delivered to the administrator and shall not be considered a public record under section 2 of P.L.1963, c. 73 (C.47:1A-2). Any record or information that is deemed confidential under any law of another state when in possession of that other state shall continue to be confidential when revealed or delivered by that other state to the administrator and shall not be considered a public record under section 2 of P.L.1963, c. 73 (C.47:1A-2).
Judge Feinberg properly concluded that these provisions of the statute require the OAUP to make this information public pursuant to the Right to Know Law, N.J.S.A. 47:1A-1, et seq. Even the original version of N.J.S.A. 46:30B-76.3 said "confidential" information should not be disclosed,[8] lending support to the concept that purely personal information did not include amounts. Information such as social security numbers and sensitive personal information, medical information or facts which would facilitate identity theft, can understandably be protected from unauthorized view. See note 6, supra.
The language "deemed confidential" in N.J.S.A. 46:30B-76.1 does not mean the State can arbitrarily cloak these claims in confidentiality merely to advance its reluctance to have owners learn of their interests. Under the State Treasurer's approach it is less likely that an owner of property will even learn of the existence of unclaimed life insurance or annuity funds. Its approach makes it less likely for owners or claimants to learn of and be motivated to submit a claim. The only result is enhancing, perhaps temporarily on some claims, the State's Treasury. It is not the purpose of the court system to construe statutes to that end. We recently held that N.J.S.A. 46:30B-76.1 and Twiss v. New Jersey Dept. of the Treasury, 124 N.J. 461, 591 A.2d 913 (1991), apply only to information to which the unclaimed owner of the property had a privacy interest prior to transfer to the OAUP. Williamson v. Treasurer of the State of New Jersey, 350 N.J.Super. 236, 246, 794 A.2d 873 (App. Div.2002). Here, Judge Feinberg aptly noted that there is no such privacy interest because the policyholder is missing or deceased. To hold otherwise "brings about an unfair result when the owner of the funds does not even know that the State Treasurer now has custody of the true owner's funds." Id. at 246, 794 A.2d 873 (citing Twiss, supra 124 N.J. at 477-478, 591 A.2d 913) (Stein, J., dissenting).
Nor do we accept the State's argument that Judge Feinberg misread Twiss, supra, and its conclusion that the confidentiality provisions of New Jersey's Unclaimed Property Act were intended to codify the State Treasurer's unauthorized practice of not revealing the balances of unclaimed accounts to third parties with no beneficial interest in the property. 124 N.J. at 475, 591 A.2d 913. Judge Feinberg properly read Twiss, which acknowledged that "with the exception of insurance policies or contracts, N.J.S.A. 46:30B-76 provides for public inspection of only the names and addresses of owners of unclaimed property." Id. at 471, 591 A.2d *1160 913 (emphasis added). The confidentiality of balances in unclaimed bank accounts which applied in Twiss has, with some dissenting voices, been acknowledged, but such confidentiality has been expressly inapplicable to amounts of unclaimed life insurance and annuity contracts, and the exception in the statute so reflected.
We agree with Judge Feinberg's reasoning and conclusions and affirm her decision substantially for the reasons stated in her written opinion dated November 13, 2002.

II.
We were aware that New Jersey's Unclaimed Property Act (N.J.S.A. 46:30B-1 et seq.) was recently amended by L. 2002, c. 35, effective July 1, 2002, and that the Right to Know Law (N.J.S.A. 47:1A-1, et seq.) was also recently amended by L. 2001, c. 404, and became effective on July 7, 2002.
The applicability of these statutes was originally not addressed or briefed by either party in the case before us until the appeal was submitted for decision. We might well have considered the issue waived at this point. See Tynan v. Vicinage 13 of the Superior Court of New Jersey, 351 N.J.Super. 385, 404, 798 A.2d 648 (App.Div.2002); Liebling v. Garden State Indem., 337 N.J.Super. 447, 465-466, 767 A.2d 515 (App.Div.), certif. denied, 169 N.J. 606, 782 A.2d 424 (2001) (citation omitted); and see Pressler, Current N.J. Court Rules, comment on R. 2:6-2 (2002). In view of the continued obligation of government to provide access to public records it is appropriate to briefly contrast these latest statutory changes. The State Treasurer submitted a letter dated December 9, 2002, pursuant to R. 2:6-11(d), to belatedly bring to our attention the amendments effected by administration bills (A-1309 and A-2507 of 2001) enacted by the Legislature many months earlier, and effective four months agoJuly 1, 2002 for chapter 35 of 2002 and July 7, 2002 for chapter 404 of 2001. We considered his letter as a supplemental letter brief and requested and received a responding letter brief.
The State Treasurer's claim of retroactivity has been considered and rejected. The amendment to N.J.S.A. 46:30B-76 does not change certain of the express recording requirements of the administrator of unclaimed property. N.J.S.A. 46:30B-76 now states:
Before making any deposit of funds as provided in R.S.46:30B-74, the administrator shall record the name and last known address of each person appearing from the holder's reports to be entitled to the property. However, the administrator shall not include in this record any information deemed confidential under R.S.46:30B-76.1. The record of the name and last known address only shall be available for the public inspection at all reasonable business hours.
Under this section, although the prior language about recording amounts for unclaimed insurance and annuities has now been deleted from the statute, it is beyond peradventure that the OAUP must still keep a record of the name and last known address of each insured, annuitant, and beneficiary, the policy number, issuing company, and amount due on each policy or contract for obvious reasons. As previously noted, the administrator would have to record this information for audit purposes, as well as tracking unclaimed funds. Without recording this additional information the OAUP would not know what amounts to pay over to claimants, the various amounts the administrator actually received, or the interest for the period during which those monies were in the custody of the administrator, when a claim *1161 for unclaimed property is made. Claimants would have difficulty establishing entitlement and the State Treasurer could not verify information. Thus, we conclude the OAUP is still required by law to record this information without regard to the statute. This latest change in statutory language is an obvious effort by the State to impose confidentiality where none previously existed, see Twiss, supra (124 N.J. at 471, 591 A.2d 913), or is even warranted. The sole purpose of this amendment appears to be impeding recovery of the funds or property by rightful claimants, or heirs thereof. Indeed, this is implicit in the fiscal impact note to the bill (A 2507 of 2002). Such matters, although for the executive and legislative branches, do not mean that the judiciary should shield its eyes to its obligations to interpret and apply the laws fairly, properly, and in the interests of justice. The amendments, as construed by the State Treasurer, would prevent members of the public, including the press, from obtaining information to which the public is entitled to under the Right to Know Law. This right to such information is clearly supported by the stated public policy in N.J.S.A. 47:1A-1 that:
government records shall be readily accessible for inspection, copying or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access accorded by P.L. 1963, c. 73 (C.47:1A-1 et seq.) as amended and supplemented, shall be construed in favor of the public's right of access.
We question whether merely because a record required to be kept is "deemed confidential" ipso facto makes what is not normally or properly confidential something that should be kept from public scrutiny.[9] This is particularly so where no version of the uniform act "drafted by the National Conference on Uniform State Laws" has ever considered such information confidential.
Moreover, even if the intent of New Jersey's 2002 amendments to its Unclaimed Property Act was to somehow limit additional information that was heretofore not confidential from being considered a public record merely by "deeming" it to be confidential, without real basis or justification, New Jersey's amended Unclaimed Property Act that became effective July 1, 2002, failed in that regard because it references a now repealed section of the Right to Know Law. The section of New Jersey's Unclaimed Property Act entitled "Confidentiality of records" (N.J.S.A. 46:30B-76.1) now states:
Any record or information other than name and address is deemed confidential when revealed or delivered to the administrator and shall not be considered a public record under section 2 of P.L.1963, c. 73 (C.47:1A-2). (emphasis added).
One of the 2002 amendments to the Right to Know Law (L. 2001, c. 404 § 17) states "Section 2 of P.L.1963, c. 73 (C.47:1A-2), section 8 of P.L.1994, c. 140 (C.47:1A-2.1) and section 4 of P.L.1963, c. 73 (C.47:1A-4) are repealed." The sponsors' statement to Assembly Bill, No. 1309 of 2000 also vaguely indicates that the provisions of the three repealed sections "are dealt with in the new sections in this bill." See also Assembly State Government Committee Statement to Assembly Bill No. 1309 (dated March 6, 2000). Although not indicating which sections those would be, it appears that the new section addressing the substance of the repealed *1162 N.J.S.A. 47:1A-2 provision is entitled "Custodian of government records to permit inspection, examination and copying; certain information to be redacted; purchase of records; immediate access in certain circumstances," N.J.S.A. 47:1A-5a,[10] that now provides that:
The custodian of a government record shall permit the record to be inspected, examined, and copied by any person during regular business hours ... unless a government record is exempt from public access by: P.L.1963, c. 73 (C.47:1A-1 et seq.) as amended and supplemented; any other statute; resolution or either of both houses of the Legislature; regulation promulgated under the authority of any statute or Executive Order of the Governor; Executive Order of the Governor; Rules of Court; any federal law; federal regulation; or federal order.
However, under our rules of construction and the stated policy purposes of the Right to Know Law we do not construe the legislation to refer to this portion of the statute by citing "section 2 of P.L.1963, c. 73 (C.47:1A-2)" in the Unclaimed Property Act (N.J.S.A. 46:30B-76.1). Indeed, we are enjoined by N.J.S.A. 47:1A-1 to construe "any limitations on the right of access" in the amended and supplemented Right to Know Law "in favor of the public's right of access." Thus, we are left with the Unclaimed Property Act referring to an unspecified portion of the Right to Know Law which no longer exists, which calls into question the validity of this section of the Unclaimed Property Act.
Furthermore, the provisions of the Right to Know Law trump those of New Jersey's Unclaimed Property Act not only because the Right to Know Law became effective on July 7, 2002, later than the Unclaimed Property Act on July 1, 2002, but because of the clear and strong public policy behind the Right to Know Law. In general, a new law altering fundamental assumptions relied upon by the old law supersedes earlier inconsistent statutes. New Jersey State Benevolent Assoc. of New Jersey, Inc. v. Town of Morristown, 65 N.J. 160, 320 A.2d 465 (1974) (citing Board of Education v. Tait, 81 N.J. Eq. 161, 86 A. 379 (E. & A.1913)); Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 223-225, 160 A.2d 265 (1960); and Mahr v. State, 12 N.J.Super. 253, 261-262, 79 A.2d 335 (Ch.Div.1951). "If the later act prescribes a new scheme or approach it will supersede a prior treatment of the matter, especially if the policies of the statutes cannot coexist." Two Guys from Harrison, supra (32 N.J. at 223, 160 A.2d 265) (citing De Ginther v. New Jersey Home, 58 N.J.L. 354, 358, 33 A. 968 (E. & A. 1895)). The policies of the Right to Know Law and the confidentiality provision of New Jersey's Unclaimed Property Act appear inconsistent, as the Right to Know Law seeks to provide the public with access to public records, while the 2002 amendments to N.J.S.A. 46:30B-76 and references to N.J.S.A. 46:30B-76.1 and its confidentiality provisions in the Unclaimed Property Act would attempt for the first time to limit access to amounts held under life insurance and annuity proceeds. Because the policies underlying these statutes are in conflict, the Right to Know *1163 Law, is entitled to precedence over the Unclaimed Property Act's ambiguous provisions regarding insurance and annuities. The public had a right to view records of the amounts and still has a right to the records at issue pursuant to the Right to Know Law. Because any limitations on the right of access "shall be construed in favor of public access," N.J.S.A. 47:1A-1, the now inconsistent provision in New Jersey's Unclaimed Property Act cannot prevail.
Moreover, we reject the State Treasurer's argument that the amendments to the State's Unclaimed Property Act should be applied retroactively. Our courts have long preferred a rule of statutory construction which favors prospective application of statutes. Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992). Prospective application is favored because of the high potential of injustice which may occur when a new law is applied retroactively. Gibbons v. Gibbons, 86 N.J. 515, 522, 432 A.2d 80 (1981). Three exceptions to the general rule against retroactive application were recognized in Twiss, supra (124 N.J. at 467, 591 A.2d 913):
Courts will apply statutes retroactively when the Legislature has expressed its intent, either explicitly or implicitly, that the statute should be so applied; when the statute is curative; or when the reasonable expectations of those affected by the statute warrant such application.
None of these exceptions apply to the amendments to the Unclaimed Property Act.
Express legislative intent can be found in either the language of the statute or in its pertinent legislative history. Gibbons, supra (86 N.J. at 522-523, 432 A.2d 80). Here, there is no express intent, as there is no reference to the retroactivity in New Jersey's Unclaimed Property Act or its legislative history. In addition, the implied intent exception does not apply. Implied intent may only be found where retroactivity is necessary to make the statute workable or to give it its most sensible interpretation. Gibbons, supra (86 N.J. at 522, 432 A.2d 80) (citing Hohl v. Tp. of Readington, 37 N.J. 271, 279, 181 A.2d 150 (1962)). However, implied intent will not be found in a "statute that changes the settled law and is related to substantive rights...." Phillips, supra (128 N.J. at 617, 608 A.2d 895). Here, because the amendments of the New Jersey's Unclaimed Property Act would, under the State Treasurer's interpretation, drastically change the existing law "under insurance policies or contacts," see Twiss, supra (124 N.J. at 471, 591 A.2d 913), it cannot reasonably be said that there was any implied intent to apply the amendments retroactively.
Nor does the curative exception apply to warrant New Jersey's Unclaimed Property Act being applied retroactively even if it were considered to apply here. The curative exception comes into play when a statute amends a previous law which is unclear or which does not effectuate the intent of the Legislature in adopting the original act. Fasching v. Kallinger, 227 N.J.Super. 270, 274, 546 A.2d 1094 (App.Div.1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989). The intended effect of a curative amendment is to bring a law into harmony with what the Legislature intended. In the Matter of D.C., 146 N.J. 31, 51, 679 A.2d 634 (1996); Sarasota-Coolidge Equities II, L.L.C. v. S. Rotondi & Sons, Inc., 339 N.J.Super. 105, 114-115, 770 A.2d 1264 (App.Div.2001) (quoting Kendall v. Snedeker, 219 N.J.Super. 283, 287, 530 A.2d 334 (App.Div.1987)). It is, however, only used to clarify the original intent, not alter the intended scope or purpose of the original act. Kendall supra (219 N.J.Super. at 287-290, 530 A.2d 334). "[C]urative acts are made necessary *1164 by inadvertence or error in the original enactment in the original statute or in its administration." 2 Sutherland, Statutory Construction, § 41.11 at 468 (6th ed.2001).
It cannot be said that 2002 amendments to New Jersey's Unclaimed Property Act are curative because they do not clarify the original intent but instead, attempt to change the clear language of the existing statute "under insurance policies or contracts." Twiss, supra (124 N.J. at 471, 591 A.2d 913). Nor was there any error. Before this amendment, New Jersey's Unclaimed Property Act remained unchanged since its original enactment in 1989, ibid., thus, the current amendment was not necessary to correct an inadvertence or error in the original enactment. Moreover, as previously noted, the Uniform Unclaimed Property Act (1981) referenced in the New Jersey statute's historical note, did not contemplate that the amounts held under insurance and annuity contracts would be deemed confidential. Nor does the 1995 version of the proposed uniform act. By now attempting to limit the right of the public to such records, which the public was fully entitled to under the previous statute, as well as under the Right to Know Law, the Legislature would be altering the intended scope of the original act. As none of the recognized exceptions to the general rule against retroactive application apply to New Jersey's Unclaimed Property Act, we could only apply it prospectively, if we were of the belief that it applied at all.
The State also contends that this information is now exempt from public disclosure under Executive Order No. 26 (2002), effective August 13, 2002, promulgated after the recent amendments to the Right to Know Law, N.J.S.A. 47:1A-1, et seq. This order purports to exclude from the definition of public record, among other things, "[i]nformation describing a natural person's finances, income, assets, liabilities, net worth, bank balances, financial history or activities, or creditworthiness, except as otherwise required by law to be disclosed." (emphasis added). Executive Order No. 26, 34 N.J. Reg. § 3043(b)(2002). We have "cautioned that the executive orders adopted pursuant to the Right to Know Law cannot be read, without more specific language, to provide an exception to the disclosure requirements of the act due to the "clear `public policy'" embodied in N.J.S.A. 47:1A-1." Asbury Park Press v. Lakewood Township Police Department, 354 N.J.Super. 146, 157-158, 804 A.2d 1178 (Law.Div.2002) (citing Shuttleworth v. City of Camden, 258 N.J.Super. 573, 592, 610 A.2d 903 (App.Div.1992)). Simply put, an Executive Order cannot amend or repeal a statute.
Executive Order No. 26 of 2002 does not provide specific language that information regarding the dollar amounts of life insurance and annuity contracts should also be excluded from public record. Such information would of course aid in locating claimants through a deceased person, as opposed to personal information about viable citizens. Moreover, the term "natural person" is not defined in the order and cannot be said to include missing or deceased persons. According to Black's Law Dictionary, Seventh Ed. (1999), a "natural person" is defined as: "A human being, as distinguished from an artificial person created by law." We would not describe the body or remains of a deceased person as still a human being or a natural person. Hence, the executive order simply does not apply to life insurance proceeds or annuity funds in any event.
In conclusion, under the recent amendments of these statutes, the OAUP's recording requirements remain the same and the public is entitled to obtain from the *1165 State Treasurer non-personal information such as the amounts held by the State under life insurance and annuity contracts under the Right to Know Law. N.J.S.A. 47:1A-1, et seq.
Affirmed. Plaintiff is entitled to an award of $500 in counsel fees, and we so order, plus taxed costs. The stay is vacated.
NOTES
[1] On February 24, 2001, Williamson filed an action in lieu of prerogative writs seeking disclosure under the Right to Know Law of the amounts of certain unclaimed funds turned over to the Treasurer by the Clerk of the Superior Court. On Williamson's appeal from the denial of his requested relief we reversed, holding that information received by the State Treasurer from the Clerk of the Superior Court regarding the transfer of funds on deposit in court are public records under the Right to Know Law and thus, the State Treasurer was required to allow Williamson to inspect the records. Williamson v. Treasurer of the State of New Jersey, 350 N.J.Super. 236, 247-248, 794 A.2d 873 (App. Div.2002).
[2] Amendments to N.J.S.A. 46:30B-7 reduced the period from five to three years for other categories of unclaimed property. See L. 2002, c. 35, § 4, effective July 1, 2002.
[3] According to the "Historical Note," this section was supposed to be "similar to § 23 of 8A Uniform Unclaimed Property Act (1981). See 8A Uniform Laws Annotated, Master Edition." There is a significant difference however, as mentioned hereinafter.
[4] New Jersey's and virtually all other states' unclaimed property information can also be reached through the web site of The National Association of Unclaimed Property Administrators, at its web site: http://www.unclaimed.org/mainframe.asp?visitor type=owner. While New Jersey's site only gives information of the name and last known address of the owner of the unclaimed funds, many other states provide additional useful information. In order to search for unclaimed funds many state sites link to http://www.missingmoney.com, which in addition to the name and address provides a description of the unclaimed property as well as whether its value is over or under $100. In addition, Florida's website allows accountants, attorneys, private investigators, and agencies to log in with a user ID and password to access account numbers and social security numbers. See footnote 6 infra.
[5] Although the short title section of the act says it may be cited as the "Uniform Unclaimed Property Act (1981)," in fact the statute is not the uniform act, was not enacted in New Jersey until 1989, and differs in many respects from the uniform act. To avoid confusion with the uniform act (which we also discuss) we omit the characterization of "uniform" when referring to New Jersey's statute.
[6] Our research discloses that at the time of this appeal, forty-three jurisdictions, including the District of Columbia and the Virgin Islands, have adopted some version or adaptation of the Uniform Unclaimed Property Act. As a starting point, twenty-six jurisdictions have utilized all or parts of the 1981 uniform act, and twelve jurisdictions now follow all or part of the 1995 uniform act.

Apparently twelve jurisdictions, including New Jersey, have added confidentiality provisions of different kinds. However, three of these twelve jurisdictions appear to limit how far confidentiality can block access to necessary information which aids in locating claimants. For instance, Florida declares that social security and account numbers are confidential, but will be released to attorneys, Florida certified public accountants, and private investigators and agencies licensed in the state. Fla. Stat. Ann. §§ 717.177 (2002). Illinois does not prohibit the furnishing of information under the UPA. 5 Ill. Comp. Stat. 48.1 (2002). Nevada's statute speaks of confidentiality, unless necessary to find the owner. Nev.Rev.Stat. 120A.145 (2002).
[7] The "Historical Note" to this section states that is similar to section 24 of the Uniform Unclaimed Property Act (1981), however, this section of the uniform act is barren of any reference to confidentiality. It certainly does not address amounts held under insurance and annuity contracts. Moreover, the cited section of the uniform act deals with a subject dealt with in Article 24 of New Jersey's statute titled "Filing Claim with Administrator." The model Uniform Unclaimed Property Act (1981) was revised in 1995, which superceded the 1981 uniform act. Similar to the Uniform Unclaimed Property Act of 1981, the recommended Uniform Unclaimed Property Act of 1995 does not contemplate the confidentiality of such records. Indeed, we can find no comparable section in either uniform act to subsections 76.1 through 76.3 of New Jersey's law.
[8] The "Historical Note" to this section wrongly asserts that this "section is similar to § 24" of the Uniform Unclaimed Property Act (1981)...." We find no such sections or provisions in the uniform law.
[9] Information that could be considered confidential might, for example, include social security numbers and medical information. That information could properly be redacted.
[10] The repealed version of the statute similarly reads that a record will be deemed public:

Except as otherwise provided in this act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records ... shall ... be deemed to be public records.... N.J.S.A. 47:1A-2. (repealed)